NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 7, 2012
Decided November 9, 2012

**Before**

RICHARD A. POSNER, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

DAVID F. HAMILTON, *Circuit Judge*

No. 12-1161

| | |
|---|---|
| ZANETA PAULIUKONIENE and KORNELIJA BERZANSKYTE, *Petitioners*, | Petition for Review of an Order of the Board of Immigration Appeals. |
| *v.* | Nos. A097 321 954, A099 113 073 |
| ERIC H. HOLDER, JR., Attorney General of the United States, *Respondent*. | |

**ORDER**

Zaneta Pauliukoniene and her minor daughter, Kornelija Berzanskyte, natives and citizens of Lithuania, petition for review of an order of the Board of Immigration Appeals. The Board upheld the immigration judge's order of removal based on a finding that Pauliukoniene applied for adjustment of status based on a sham marriage and that both had overstayed their visas. Pauliukoniene asserts that substantial evidence does not support the IJ's finding that she committed marriage fraud. We deny the petition for review.

Pauliukoniene entered the United States in 2001 on a one-year, nonimmigrant visa. Two years later, Pauliukoniene married Richard Baumann, a United States citizen. Baumann then petitioned for Pauliukoniene's admittance as an alien relative, and she applied for lawful permanent resident status. Her application was denied as abandoned when she failed to appear at the adjustment interview. Pauliukoniene remained in the country but apparently made no further attempts to adjust her immigration status. In 2003, her daughter Kornelija Berzanskyte, then eight years old, joined her, entering the country on a six-month nonimmigrant visa. Pauliukoniene later divorced Baumann after they had been legally married for three years.

She and her daughter continued living in the United States without incident until Baumann came to the attention of the Department of Homeland Security through its investigation of Jeremy Starnes, who was charged with arranging more than nine sham marriages for foreign nationals. The government did not pursue any criminal charges against Pauliukoniene, but DHS charged her with removability under 8 U.S.C. § 1227(a)(1)(B) and 8 U.S.C. § 1182(a)(6)(C)(i) for seeking to adjust her status based on a fraudulent marriage. The agency also charged both petitioners as removable for overstaying their visas. See 8 U.S.C. § 1227(a)(1)(A)(ii).

At the immigration hearing, Pauliukoniene admitted overstaying her visa but denied any marriage fraud. She testified that she married her husband in good faith. She said that she continued to live with Baumann until late 2003, when he "just disappeared." She had no further contact with him and obtained a divorce from him in 2004. Pauliukoniene did not corroborate the validity of her marriage with any documents or other evidence showing that she and Baumann had in fact lived together and planned to make a life together.

A DHS agent who had investigated the Starnes marriage-fraud ring also testified. The agent explained that he first suspected Baumann when he cross-referenced Starnes's phone records with people who had filed immigration petitions. The agent testified that Starnes, who was participating in a proffer session with the government, had recognized Baumann as a personal acquaintance and confirmed that he had arranged his marriage to Pauliukoniene. The agent testified that Starnes told him that Pauliukoniene had paid $4,000 on the day of the marriage, which was split among Baumann, Starnes, and a second, unidentified arranger. Starnes provided no documentary evidence or other corroboration of the payment. The agent also testified that Baumann had an extensive criminal history, including a DUI arrest on the date of his marriage, and in multiple arrests had given addresses that were not consistent with Pauliukoniene's testimony about when she had lived with Baumann.

The IJ found Pauliukoniene removable for misrepresenting her marriage as bona fide and found both petitioners removable for overstaying their visas. The IJ explained that he

credited the DHS agent's "thorough consistent and credible" testimony over that of Pauliukione, whom he found "incredible and not worthy of belief." The IJ pointed out that, despite her claims that she and Baumann had maintained joint checking and credit accounts, Pauliukonione had offered no documentation, such as joint financial statements, to support the existence of a bona fide relationship. Accordingly, the IJ ordered that both petitioners be removed to Lithuania.

The Board upheld the IJ's decision in all respects. It found no clear error in the IJ's credibility findings, agreeing with the IJ that Pauliukoniene's testimony was undermined by her failure to produce documentation of a bona fide marriage. The Board did not address Pauliukoniene's argument that the IJ had committed legal error by concluding that the mere submission of an application for adjustment of status that included material misrepresentations was sufficient to render her inadmissible.

Regardless of our disposition of this petition for review, Pauliukoniene and her daughter remain subject to the IJ's order that they are removable for overstaying their visas. Pauliukoniene conceded to the immigration court that she is removable on this ground. She failed to exhaust her administrative remedies by challenging this finding before the Board, and she does not challenge it on judicial review. Pauliukoniene's challenge to the finding of marriage fraud, however, is not moot because her removal on this ground would subject her to a permanent bar to readmission. See 8 U.S.C. § 1182(a)(6)(c)(i); see also *Valenzuela-Solari v. Mukasey*, 551 F.3d 53, 56 (1st Cir. 2008); *Singh v. Gonzales*, 451 F.3d 400, 403 (6th Cir. 2006); *Tapia Garcia v. INS*, 237 F.3d 1216, 1218 (10th Cir. 2001).

Pauliukoniene first challenges the IJ's legal determination that she is removable on the basis of material misrepresentations in her unsuccessful application for adjustment of status. She does not dispute that a successful attempt to adjust her status on the basis of a sham marriage would render her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i). She points out, however, that 8 U.S.C. § 1227(a)(1)(A) provides only for the removal of "any alien who *at the time of entry or adjustment of status* was . . . inadmissible." (emphasis added). Read literally, she maintains, the statute does not provide for the removal of aliens like herself who enter the country legally and then merely attempt, unsuccessfully, to adjust their statuses based on material misrepresentations.

This argument lacks merit because Pauliukoniene's marriage fraud rendered her "inadmissible" as an alien who "by fraud or willfully misrepresenting a material fact . . . *sought* to procure [an immigration benefit]." See 8 U.S.C. § 1182(a)(6)(C)(i). Inadmissibility thus can be based on an unsuccessful attempt at immigration fraud. And, in this context, the term "inadmissible" is synonymous with "removable." See 8 U.S.C. § 1229a(e)(2)(A); *Barradas v. Holder*, 582 F.3d 754, 759 n.3 (7th Cir. 2009); *Zamora-Mallari v. Mukasey*, 514 F.3d

679, 687 n.2 (7th Cir. 2008). Any alien who is "inadmissible" is removable for the same reason. See 8 U.S.C. § 1229a(a)(2) ("An alien placed in proceedings under this section may be charged with any applicable ground of inadmissibility under section 1182(a) of this title or any applicable ground of deportability under section 1227(a) of this title."); *Alaka v. Attorney General of the United States*, 456 F.3d 88, 102 n.24 (3d Cir. 2006) ("[I]nadmissibility is simply another form of removability."); *Balogun v. Ashcroft*, 270 F.3d 274, 279 (5th Cir. 2001) ("[I]f an alien is inadmissible for having committed offenses specified in § 1182(a), he is removable as well.").

Pauliukoniene next argues that her removal hearing violated due process principles because the IJ allowed the DHS agent to testify about hearsay statements made by Starnes. The Federal Rules of Evidence do not apply in removal proceedings, and hearsay is admissible unless its use renders the hearing "fundamentally unfair." *Ogbolumani v. Napolitano*, 557 F.3d 729, 734 (7th Cir. 2009) (allowing use of hearsay to support finding of marriage fraud). Pauliukoniene argues that the most important evidence against her was the agent's hearsay testimony about Starnes's statements that he had arranged Baumann's marriage as part of his fraudulent marriage scheme. Her counsel was able to cross-examine the agent but not Starnes, the confessed leader of the marriage-fraud scheme. She was certainly entitled to cross-examine the agent, see, e.g., *Pronsivakulchai v. Holder*, 646 F.3d 1019, 1022 (7th Cir. 2011); *Ogbolumani*, 557 F.3d at 734. The issue is whether Pauliukoniene has shown sufficient grounds to find the use of hearsay fundamentally unfair in this case.

We are not persuaded that she has. First, it was apparent that Starnes had provided reliable information in his proffer session with the government. The marriage-fraud ring was certainly real, having resulted in many criminal convictions based on guilty pleas that were consistent with other information provided by Starnes. The agent described his efforts to use Starnes's telephone records to identify others who had filed immigration applications for supposed relatives. Those efforts led him to Baumann and his application on behalf of Pauliukoniene, among many others. The agent gathered those files and presented them methodically to Starnes, who immediately recognized a photograph of Baumann as his sister's former boyfriend. The agent found that Starnes's information was reliable and credible, and the IJ was entitled to give that judgment considerable weight. Second, Pauliukoniene provided no credible evidence to rebut Starnes's accusation. She provided no independent corroboration of her unlikely account of a marriage that was entered into in good faith and fell apart very quickly when Baumann simply disappeared.

Pauliukoniene also argues that the IJ's marriage-fraud finding lacks substantial evidence because, she says, it was grounded in an adverse credibility determination unsupported by substantial evidence. The IJ provided a sufficient explanation for his credibility finding in this case, focusing on Pauliukoniene's failure to submit documentary

evidence of a bona fide marriage. Adverse credibility findings must be supported by "specific, cogent reasons that bear a legitimate nexus to the finding." *Lin v. Holder*, 656 F.3d 605, 608 (7th Cir. 2011), quoting *Toure v. Holder*, 624 F.3d 422, 429 (7th Cir. 2010). An IJ may base adverse credibility determinations on the lack of corroborating evidence combined with inconsistencies, contradictory evidence, or inherently improbable testimony. See *Osonowo v. Mukasey,* 521 F.3d 922, 927 (8th Cir. 2008); *Esaka v. Ashcroft*, 397 F.3d 1105, 1110 (8th Cir. 2005). Here, Pauliukoniene's testimony was contradicted by the DHS agent's testimony about how he linked Baumann to Starnes and how Starnes admitted to arranging Baumann and Pauliukoniene's marriage. Although documentation of Pauliukoniene's illegal payment to Baumann and Starnes would have bolstered the government's case, we cannot say that the record compels a contrary conclusion given the IJ's determination that the agent was credible. We doubt that the absence of reliable documentation of such an illegal payment, almost certainly in cash, undermines the credibility of the account.

Finally, Pauliukoniene argues that the IJ and the Board impermissibly placed the burden on her to prove that she had not committed marriage fraud. She relies on the Board's statement that it was her "burden to show that she had entered into a bona fide marriage for immigration purposes." In fact, the government has the burden of proving removability by clear and convincing evidence. 8 U.S.C. § 1229a(c)(3)(A); *Surganova v. Holder*, 612 F.3d 901, 904 (7th Cir. 2010) (affirming finding that marriage was sham).

The Board's misstatement is certainly troubling. We are convinced, however, that it was harmless because the IJ applied the correct burden of proof. Where, as here, the Board agreed with the IJ's decision and supplemented that opinion with its own observations, we review both decisions. See *Sarhan v. Holder*, 658 F.3d 649, 653 (7th Cir. 2011). The IJ, who was of course the trier of fact, stated and applied the correct burden of proof when he found that "both charges of removability have been established by evidence which is clear and convincing." The IJ noted that Pauliukoniene's failure to produce corroborating evidence weighed against her credibility; he did not suggest that she bore the burden of proving that she had not committed marriage fraud. Cf. *Atunnise v. Mukasey*, 523 F.3d 830, 835 (7th Cir. 2008) (burden of proof misapplied where "IJ maintained throughout the removal proceedings that it was Atunnise's burden to prove that she is admissible"); *Smolniakova v. Gonzales*, 422 F.3d 1037, 1053 (9th Cir. 2005) (IJ erred by saying that evidence of fraudulent marriage was unclear but concluding that respondent "had not met her 'heavy burden' of proving that she did not enter into this marriage solely for the purpose of obtaining immigration benefits").

Accordingly, we DENY the petition for review.