NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued November 14, 2012
Decided December 13, 2012

**Before**

DANIEL A. MANION, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 12-1905

| | |
|---|---|
| SHADI JARADAT, | Petition for Review of an Order of the Board |
| *Petitioner,* | of Immigration Appeals. |
| | |
| *v.* | No. A099 025 637 |
| | |
| ERIC H. HOLDER, JR., | |
| Attorney General of the United States, | |
| *Respondent*. | |

**ORDER**

Shadi Jaradat, a Palestinian native of the West Bank, fears that if he returns there Hamas will persecute him as a pro-Western Israeli spy. He seeks asylum, but the Board of Immigration Appeals upheld the ruling of an immigration judge denying him asylum and ordering him removed for overstaying his visa. Because the Board, which assumed that Jaradat was credible, erred in ruling that Hamas did not persecute Jaradat on account of an imputed political opinion, we grant the petition and remand for the Board to consider his

credibility.

At the hearing before an immigration judge on his asylum application, Jaradat testified that in 2004 he opened the first internet café in his hometown in the West Bank. In operating the café, he wore Western clothes, frequented Israel to make purchases, and allowed young Palestinian men and women to interact openly in the café. In the eyes of the fundamentalist organization Hamas, which exerted local control, the mingling of the sexes at Jaradat's café defied Shari'a law.

Half a year after Jaradat opened the café, six men wearing black masks associated with Hamas came into the café and tied Jaradat up. They beat him and accused him of spying for Israel, recruiting young girls to be Israeli spies, and of improperly allowing men and women to mingle. Before setting fire to the café and then fleeing, they tried to access his electronic records, searching for confirmation that the café was a center for communicating with the Israelis. After receiving stitches for head and hand injuries, Jaradat fled to Jerusalem for four months, where he obtained a student visa to travel to the United States and enroll in a college.

The government initiated removal proceedings against Jaradat after he overstayed his student visa. Jaradat responded by applying for asylum and withholding of removal, asserting persecution based on his membership in a particular social group, political opinion, religion, and nationality. (He abandoned the latter two grounds on appeal to the Board.) He also sought relief under the United Nations Convention Against Torture.

After the hearing, the IJ denied Jaradat's application for asylum, finding Jaradat not credible. The IJ noted that Jaradat did not mention his fear of persecution when seeking his student visa at the U.S. consulate and never attended the college to which he told U.S. officials he was bound. The IJ further ruled that Jaradat failed to link the harm that he allegedly suffered to any protected ground. Specifically, the IJ said, Jaradat had not defined a particular social group of which he was a member. In addition the IJ judged that, because Jaradat testified that he did not engage in political activities, the beating and fire at the café must have arisen out of a dispute over a business practice rather than any actual or imputed political opinion. The IJ also denied withholding of removal and CAT relief, but Jaradat has abandoned those claims in this court.

Jaradat appealed to the Board. He argued that his social group was the "forum in his internet café," which defied Hamas ideology. Jaradat added that because Hamas believed him to be an Israeli spy, he was persecuted for political opinion as well. The Board assumed his testimony was credible, but echoed the IJ in concluding that Jaradat inadequately defined his social group and that Jaradat's political inactivity prevented him from

establishing persecution on account of his political opinion. The Board also affirmed the denial of asylum, withholding, and CAT protection.

The only issue that the parties contest in this court is whether, by beating Jaradat and burning his café, Hamas persecuted him based on his membership in a particular social group or his political opinion. An applicant is entitled to asylum if she has suffered persecution (or has a well-founded fear of future persecution) on account of a protected ground: race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). On petition for review of the Board's denial of asylum, the agency's decision cannot stand if the record "compels a different result," *Rama v. Holder*, 607 F.3d 461, 465 (7th Cir. 2010); *see also* 8 U.S.C. § 1252(b)(4)(B), or if its decision is based on a legal error, § 1252(a)(2)(D). When, as here, the Board adopts and supplements the IJ's decision, the IJ's decision as supplemented by the Board becomes the subject of the appeal. *E.g.*, *Jonaitiene v. Holder*, 660 F.3d 267, 270 (7th Cir. 2011).

In his brief to this court Jaradat asserts that he is a "young secular Palestinian with western dress and character traits" whose internet café openly violates strict Shari'a law in the West Bank. We decline to rule on whether Jaradat is a member of a particular social group and instead grant the petition on the ground that the Board erred in rejecting his claim that Hamas persecuted him based on his political opinion.

The Board assumed without deciding that Jaradat was credible. No evidence contradicted Jaradat's testimony that, while beating him and burning his café, the Hamas operatives accused him of being an Israeli spy and tried to search his computer files to prove their accusations. Accusations of spying for another country can establish persecution on account of an imputed political opinion. *See, e.g.*, *Hamdan v. Mukasey*, 528 F.3d 986, 992–93 (7th Cir. 2008) (remanding for Board to consider allegations that Palestinian militant groups would harm asylum applicant because they thought he was spying for Israel); *Tadesse v. Gonzales*, 492 F.3d 905, 906, 910 (7th Cir. 2007); *Vujisic v. INS*, 224 F.3d 578, 581–82 (7th Cir. 2000). If Jaradat's uncontroverted testimony that Hamas believed him to be an Israeli spy is indeed credited, then the record compels the conclusion that Jaradat established persecution on account of an imputed political opinion, thereby warranting a remand. *See Kadia v. Holder*, 557 F.3d 464, 467–68 (7th Cir. 2009) (remanding when Board "could not have found that [applicant] failed to show persecution" without "at least implicitly adopting the IJ's finding that [applicant's testimony that police accused her of being a foreign spy and beat her] was not entirely credible").

In rejecting Jaradat's claim of political persecution, the Board's reasoning appears to contradict itself. It acknowledges Jaradat's testimony that Hamas accused him "of being an Israeli spy," but then concludes that Jaradat "did not testify that the Hamas members were

aware that he held any political beliefs or affiliations or imputed a political opinion to him." The Board's opinion appears to assume, mistakenly, that Jaradat had to engage in traditional political activity to be eligible for asylum based on political opinion. But as long as Hamas genuinely believed—rightly or wrongly—that he supported Israel (and the Board has not yet decided otherwise), Jaradat can establish persecution based on imputed political opinion. *See Hamdan*, 528 F.3d at 992; *Nakibuka v. Gonzales*, 421 F.3d 473, 478 (7th Cir. 2005). Therefore, unless Jaradat's testimony is discounted as incredible, the Board's decision is erroneous.

A remand is needed to allow the Board to resolve Jaradat's challenge to the IJ's adverse credibility determination because we cannot confidently predict whether the Board would uphold that finding. An adverse credibility finding must be supported by "specific, cogent reasons" that legitimately bear on the finding. *Lin v. Holder*, 656 F.3d 605, 608 (7th Cir. 2011). Immaterial discrepancies in Jaradat's account do not necessarily warrant disbelieving his entire story. *See Krishnapillai v. Holder*, 563 F.3d 606, 616–17 (7th Cir. 2009) (explaining that under REAL ID Act, IJs must distinguish between credibility on material and nonmaterial issues). We have overturned IJ credibility findings when they lack substantial evidence, even under the REAL ID Act's highly deferential standard of review. *E.g.*, *Moab v. Gonzales*, 500 F.3d 656, 660–62 (7th Cir. 2007) (overturning adverse credibility determination despite applicant not mentioning fear of persecution on account of sexual orientation during airport and credible-fear interviews). And the Board itself assesses credibility findings under an even less-exacting, clear-error standard. 8 C.F.R. § 1003.1(d)(3)(I); *see also United States v. McKinney*, 919 F.2d 405, 423 (7th Cir. 1990) (Posner, J., concurring) (explaining that review for substantial evidence is more deferential than for clear error).

On this record, the Board may overturn the IJ's decision to reject Jaradat's credibility. The IJ found Jaradat not credible in large part because he both failed to enroll in college and said nothing about Hamas during his visa interview. But the Board needs to decide in the first instance whether that finding is clearly erroneous, and if not, whether the IJ properly inferred from it that Hamas never beat Jaradat for being an Israeli spy. It is therefore plausible that the Board could reverse the IJ's adverse credibility finding.

Because the Board could reverse the IJ's credibility finding, we cannot be certain that the Board's error was harmless or that its denial of asylum was"foreordained," apart from its error, *Szczesny v. Ashcroft*, 358 F.3d 464, 466 (7th Cir. 2004). Even if the Board's decision would have been supported by substantial evidence had it adopted the IJ's adverse credibility finding, the *Chenery* doctrine forbids us from rewriting the Board's opinion to adopt that finding. *See, e.g.*, *Borovsky v. Holder*, 612 F.3d 917, 920–21 (7th Cir. 2010) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

The petition for review is **GRANTED**, the Board of Immigration Appeals' removal order is **VACATED**, and the case is **REMANDED** to the Board of Immigration Appeals for further proceedings consistent with this order.