# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 16-3407

———————————————

Maxwell O. Abuya

*Petitioner*

v.

Jefferson B. Sessions, III, Attorney General

*Respondent*

——————————

Petition for Review of an Order of the
Board of Immigration Appeals

——————————

Submitted: June 6, 2017
Filed: October 17, 2017

——————————

Before LOKEN, MURPHY, and MELLOY, Circuit Judges.

——————————

LOKEN, Circuit Judge.

Maxwell Onchonga Abuya, a citizen of Kenya, was admitted to the United States in December 2005 as a nonimmigrant student. He married April Maldonado, a United States citizen, in October 2006 and dropped out of school in 2007. In July 2007, Maldonado filed a Petition for Alien Relative, Form I-130, and Abuya filed an Application to Adjust Status, Form I-485. In August 2012, the Department of Homeland Security ("DHS") commenced removal proceedings, charging that Abuya

(i) failed to maintain his status as a nonimmigrant student, see 8 U.S.C. § 1227(a)(1)(C)(i); and (ii) entered into a fraudulent marriage with the purpose of procuring adjustment of status, see §§ 1182(a)(6)(C)(i), and 1227(a)(1)(A). Abuya conceded the first charge but contested the second. After an evidentiary hearing, the immigration judge ("IJ") sustained both charges, and the Board of Immigration Appeals ("BIA") affirmed. Abuya petitions for review, arguing DHS failed to prove a fraudulent or sham marriage. The finding that Abuya entered into a marriage for the purpose of evading the immigration laws results in a lifetime bar on the approval of petitions for immigrant status on his behalf. See 8 U.S.C. § 1154(c). Therefore, we have jurisdiction to review his challenge to removability under § 1227(a)(1)(A), despite his concession that he is removable on another ground. See Nguyen v. Mukasey, 522 F.3d 853, 855 (8th Cir. 2008); Pauliukoniene v. Holder, 496 F. App'x 657, 659-60 (7th Cir. 2012) (unpublished). We deny the petition for review.

## I.

In a removal proceeding, DHS has the burden to prove by "clear and convincing evidence" that an alien admitted to the United States is removable. 8 U.S.C. § 1229a(c)(3)(A). An alien is removable under § 1227(a)(1)(A) if he was inadmissible "at the time of entry or adjustment of status." An alien is inadmissible under § 1182(a)(6)(C)(i) if, "by fraud or willfully misrepresenting a material fact, [he sought] to procure . . . or has procured[] a visa, other documentation, or admission into the United States or other [immigration] benefit." Fraudulently misrepresenting that a marriage is bona fide to procure adjustment of status is a basis for removability. See Vladimirov v. Lynch, 805 F.3d 955, 961 (10th Cir. 2015). To prove Abuya was inadmissible on this ground, DHS must prove that Abuya and Maldonado did not intend "to establish a life together at the time they were married." Ibrahimi v. Holder, 566 F.3d 758, 764-65 (8th Cir. 2009) (quotation omitted).

-2-

Whether Abuya's marriage to Maldonado was fraudulent is a question of fact. See Agyei v. Holder, 729 F.3d 6, 14 (1st Cir. 2013); Abdulahad v. Holder, 581 F.3d 290, 295 (6th Cir. 2009). When the issue is within our jurisdiction, such as in judicial review of a removal order, we review this finding under the deferential substantial evidence standard. See Wen Yuan Chan v. Lynch, 843 F.3d 539, 545 (1st Cir. 2016); 8 U.S.C. § 1252(b)(4)(B) ("administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").[1] Though the couple's intent at the outset of the marriage is the relevant question, "[w]hen assessing the couple's intent, courts look to both the period before and after the marriage." Surganova v. Holder, 612 F.3d 901, 904 (7th Cir. 2010). "Evidence that the parties separated after their wedding is relevant in ascertaining whether they intended to establish a life together when they exchanged marriage vows." Matter of McKee, 17 I. & N. Dec. 332, 334-35 (1980).

## II.

At the evidentiary hearing, Immigration Officer Trendel Sheffield testified that he interviewed Abuya and Maldonado in March 2008 in connection with their pending I-130 and I-485 applications. After background checks led him to doubt the validity of the marriage, Sheffield requested an investigation by the USCIS Fraud Detection National Security Unit. Fraud Detection Officer Mark Reis-Henrie testified that he visited Abuya's residence on May 1, 2010. Abuya and several other males were present. When Reis-Henrie asked where Maldonado was, Abuya responded that she left about a week earlier and did not leave any belongings behind.

---

[1] In Chan, where the alien sought to avoid removal on other grounds by claiming adjustment of status based on marriage to a U.S. citizen, the alien had the burden of proving a bona fide marriage. 843 F.3d at 545. Here, where the asserted ground of removal is a fraudulent marriage intended to procure adjustment of status, DHS has the burden to prove the marriage fraudulent. But the substantial evidence standard governs judicial review of the marriage question in both types of cases.

Reis-Henrie next visited Maldonado at the address she had reported in public records and asked about her relationship with Abuya. She stated she was married to Abuya but they were having disagreements. When asked, Maldonado said she had left some belongings at Abuya's home and that "he was from Kenya, Africa." After that meeting, Reis-Henrie obtained copies of numerous applications from Maldonado to the Kansas Social and Rehabilitative Services and other benefit organizations from August 2006 through September 2010. Though Maldonado stated her name was April Abuya on the I-130, she stated her name was April Maldonado on the state benefit applications. Maldonado also stated she was not married and lived with her mother and her children, listing a different address in Wichita, Kansas than the one at which Abuya resided. She did not list Abuya as her husband or a person in her household on any application made during their marriage.

Reis-Henrie testified that he again visited Abuya on May 20, 2011. This time, Abuya was present with a female, Damaris Nyeaga. Abuya told Reis-Henrie that Maldonado had left three weeks earlier to go to Texas to care for her ill brother. Seeing women's clothing throughout the apartment, Reis-Henrie asked whether Abuya could show him any clothing belonging to Maldonado. Out of the presence of Nyeaga, Abuya showed Reis-Henrie a striped sweater. Separately, Reis-Henrie asked Nyeaga to show him whether any clothing in the home belonged to her. Nyeaga brought Reis-Henrie the same sweater Abuya said belonged to Maldonado.

Officer Sheffield learned in May 2012 that the Fraud Detection Unit made a finding of fraud. Sheffield then obtained police reports from 2009 stating that Maldonado was the girlfriend of Dante Harris. Sheffield spoke with the principal of the elementary school Maldonado's daughter attended. The principal stated that the school's address for the daughter was Maldonado's address, that Abuya's address was not within the school's boundaries, and that no petition had been filed for the child to attend an out-of-boundary school. Abuya was not listed on school records as a parent or emergency contact.

Abuya testified that he started living with Maldonado in "August," after they were married, never clarifying the year. He did not know Maldonado applied for state benefits. The last time he talked to Maldonado was when renewing his lease in 2010; they had separated multiple times before then. Abuya testified that Nyeaga arrived at his home about three weeks before Reis-Henrie's May 2011 visit. Initially, they were not in a romantic relationship, but this later changed. Abuya stated that Maldonado had gone to Texas about three months prior to Reis-Henrie's visit and that Maldonado and Nyeaga never lived in his home at the same time. He divorced Maldonado in December 2012. Maldonado was listed as a hearing witness but did not appear. A May 2012 letter from Maldonado to DHS withdrawing her Form I-130 application stated that she had been separated from Abuya for almost two years, but maintained that their "marriage was one of the best."

The IJ found that DHS "submitted clear and convincing evidence that [Abuya] attempted to procure adjustment of status by willfully misrepresenting a material fact that his marriage was *bona fide* when, in fact, it was entered into solely to obtain an immigration benefit." The IJ expressly found that Officers Sheffield and Reis-Henrie were credible witnesses whose testimony was consistent with other record evidence. The IJ found that Abuya's testimony "was vague as to the specific dates he lived with April Maldonado," inconsistent with Maldonado's benefit applications and the police report, and therefore not credible. Based on these credibility findings, the IJ found that DHS "submitted significant evidence to support its claim that [Abuya] did not enter into a valid marriage." Accordingly, the IJ sustained the removability charge under 8 U.S.C. § 1227(a)(1)(A). "For the reasons stated by the Immigration Judge," the BIA affirmed the IJ's finding that DHS met its burden to prove by clear and convincing evidence that Abuya is inadmissible under § 1182(a)(6)(C)(i) and therefore removable under § 1227(a)(1)(A).

-5-

## III.

Abuya's sole contention on appeal is that DHS failed to meet its burden to prove he was removable under 8 U.S.C. § 1227(a)(1)(A) because he used a sham marriage to seek adjustment of status. "Because [DHS] presented scant evidence of Mr. Abuya's intention when he married April Maldonado on October 19, 2006, [DHS] failed to meet[] its burden in proving removability under" § 1227(a)(1)(A). We agree DHS had the burden to prove by clear and convincing evidence that the couple did not intend to establish a life together at the time of the marriage, and that separation after marriage, while relevant, is not sufficient to prove the marriage invalid at inception. But here the "scant evidence" of the couple's initial intent included records showing that Maldonado in applying for public benefits before, during, and after the marriage represented that she was unmarried and not living with Abuya. In response, Abuya provided testimony the IJ found not credible -- vague as to the specific dates he lived with Maldonado, internally inconsistent, and contrary to the documentary evidence. In lieu of Maldonado's testimony, Abuya submitted a May 2012 letter withdrawing her I-130 visa application and stating the marriage had been good but she and Abuya were separated. On this record, the question is whether DHS's *unrefuted* evidence, gathered some years after the marriage, was sufficient to prove, as the IJ found, that the couple intended in 2006 to enter into a sham marriage that would procure an immigration benefit when Abuya's student visa expired.

After careful review of the administrative record as a whole, we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). The IJ's ultimate finding was based substantially on credibility findings -- the testimony of Immigration Officer Sheffield and Fraud Detection Officer Reis-Henrie was credible, and Abuya's testimony regarding his marriage to Maldonado was not credible. We defer to credibility findings that are "supported by specific, cogent reasons" because the IJ "sees the witness testify and is therefore in the best position to determine his or her credibility." Fofanah v.

-6-

Gonzales, 447 F.3d 1037, 1040 (8th Cir. 2006); see Abdulahad, 581 F.3d at 295.  "An IJ may base adverse credibility determinations on the lack of corroborating evidence combined with inconsistencies, contradictory evidence, or inherently improbable testimony."  Pauliukoniene, 496 F. App'x at 661 (citation omitted).

Abuya argues that the extensive investigation by Officers Sheffield and Reis-Henrie yielded evidence that might permit other findings, such as welfare fraud, but not a finding of marriage fraud.  "We are not at liberty to reweigh the evidence," as Abuya urges.  Ibrahimi, 566 F.3d at 765 (quotation omitted).  We conclude that the testimony and documentary evidence submitted by DHS -- and not refuted by credible evidence that Abuya and Maldonado *ever* lived together -- was substantial evidence that supported the IJ's finding that the marriage of Abuya and Maldonado was fraudulent under § 1182(a)(6)(C)(i) and therefore Abuya is removable under § 1227(a)(1)(A).

Accordingly, we deny the petition for review.

_____