# United States Court of Appeals
## For the First Circuit

No. 15-2112

WEN YUAN CHAN,

Petitioner,

v.

LORETTA E. LYNCH,
ATTORNEY GENERAL OF THE UNITED STATES,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Barron, Selya and Stahl,
<u>Circuit Judges</u>.

<u>Gregory Romanovsky</u>, with whom <u>Romanovsky Law Offices</u> was on brief, for petitioner.
<u>Robert Michael Stalzer</u>, Attorney, Office of Immigration Litigation, with whom <u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, United States Department of Justice, <u>Stephen J. Flynn</u>, Assistant Director, Office of Immigration Litigation, and <u>Annette M. Wietecha</u>, Attorney, Office of Immigration Litigation, were on brief, for respondent.

December 13, 2016

**SELYA**, **Circuit Judge**.  This case presents a question of first impression in this circuit: when United States Citizenship and Immigration Services (USCIS) has approved an I-130 "immediate relative" visa petition based on an alien's marriage to a United States citizen, does the immigration court, in a parallel removal proceeding, have jurisdiction to inquire into the bona fides of the anchoring marriage?  Here, the immigration judge (IJ) answered this question in the affirmative; found the anchoring marriage to be a sham; denied the alien's request for an adjustment of status; and entered an order of removal.  The Board of Immigration Appeals (BIA) affirmed.  After careful consideration, we hold that the bona fides of the anchoring marriage were properly before the immigration court and — with that foundation in place — we conclude that the BIA's decision is supported by substantial evidence.  Accordingly, we deny the alien's petition for judicial review.

## I.  BACKGROUND

Petitioner Wen Yuan Chan is a Chinese national.  She entered the United States in February of 2006 on a non-immigrant visitor's visa.  Around the beginning of April, she met her husband-to-be, Sui Wah Chan,[1] who is a citizen of the United States.  Their courtship was brief: within two months, they married.  Sui

---

[1] Elsewhere in the record, the spelling of the name "Sui Wah Chan" is inconsistent.  The record does not explain these discrepancies, and we adopt the spelling employed by the IJ.

Wah Chan promptly filed papers with USCIS to adjust the immigration status of both the petitioner and her son so that they could become legal permanent residents (LPRs).  USCIS refused to recognize the marriage, however, and rejected her application for adjustment of status in October of 2007.[2]

On December 12, 2007, the Department of Homeland Security instituted removal proceedings against the petitioner (who, by then, had overstayed her visitor's visa).  While those removal proceedings were pending, Sui Wah Chan again asked USCIS, by means of an I-130 "immediate relative" visa petition, to recognize his marriage to the petitioner.  USCIS approved this second I-130 petition in October of 2008.  Because removal proceedings were in progress, however, only the immigration court (not USCIS) could adjust the petitioner's status.  See 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(i).

On October 28, 2010, the petitioner filed applications for an adjustment of status and a waiver of inadmissibility in the removal proceeding.  On February 14, 2013 (ironically, Valentine's Day), the IJ held a hearing to determine the bona fides of the petitioner's marriage and to pass upon her pending applications. The IJ found that the petitioner's testimony was not credible and

---

[2] The petitioner's son apparently received an adjustment of status.  The record contains no explanation as to why USCIS treated the mother and the son differently.

that, based on the evidence presented, her "marriage at the time of its inception was not bona fide." Since the petitioner's application for an adjustment of status was premised on the marriage, the IJ's finding that the marriage was a sham rendered her ineligible to adjust her status.

Although the inquiry might have ended there, the IJ went on to find the petitioner inadmissible for two separate reasons. First, he concluded that she was inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i) because she was attempting to procure an immigrant visa through a fraudulent marriage. Second, he concluded that she was inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(I) due to her 2008 nolo contendere plea to a Connecticut assault charge (which the IJ found to be a crime involving moral turpitude). Next, the IJ refused the petitioner's request for a waiver of inadmissibility, both as a matter of discretion and because he found her ineligible for the waiver. Having announced these rulings, the IJ wrapped up the package by ordering the petitioner's removal to China.

The petitioner appealed to the BIA, which affirmed ostensibly "[f]or the reasons discussed by the [IJ]."[3] The BIA,

---

[3] In a confused passage, the BIA also seems to have affirmed a decision that the IJ never made (suggesting that the IJ denied the application for an adjustment of status as a matter of discretion). In point of fact, it was the waiver of inadmissibility, not the application for an adjustment of status, that the IJ denied as a matter of discretion. Given our conclusion

- 4 -

however, added its own gloss.  Like the IJ, it concluded that the petitioner "fail[ed] to establish [that] she entered into the marriage in good faith," thus rendering her ineligible for the relief that she sought.  In reaching this conclusion, the BIA explicitly rejected the petitioner's contention that her approved I-130 petition stripped the IJ of jurisdiction to consider whether her marriage was bona fide.  The BIA further agreed that the petitioner's sham marriage rendered her inadmissible under 8 U.S.C. § 1182(a)(6)(C)(i).  In view of this determination, the BIA saw no need to address the question of whether the petitioner was inadmissible on account of her criminal record.  This timely petition for judicial review followed.

## II.  ANALYSIS

"Where, as here, the BIA adopts and affirms the IJ's decision but adds reasoning of its own, we review the tiered decisions as a unit."  Ramirez-Matias v. Holder, 778 F.3d 322, 325 (1st Cir. 2015).  In this case, however, we begin with a threshold matter: the government's challenge to this court's jurisdiction (a challenge premised on what it perceives to be the discretionary nature of the decision below).

---

that the petitioner is not eligible for an adjustment of status because of her sham marriage, see text infra, any error in this regard is manifestly harmless.

We readily acknowledge that, in the immigration context, "Congress has heavily circumscribed federal courts' jurisdiction over . . . discretionary decisions." Mele v. Lynch, 798 F.3d 30, 32 (1st Cir. 2015) (citing 8 U.S.C. § 1252(a)(2)(B)(i)). The government attempts to wield this principle as a shield, arguing that we lack jurisdiction to review the BIA's decision because the BIA denied the petitioner's application for an adjustment of status as a matter of discretion. Such a decision, the government says, is one that we are forbidden from reviewing. See 8 U.S.C. § 1252(a)(2)(B).

Whatever application this principle may have in this case — a matter on which we take no view — we nonetheless have jurisdiction to review colorable constitutional and legal claims embedded in such a decision. See Ayeni v. Holder, 617 F.3d 67, 70-71 (1st Cir. 2010). In this instance, the petitioner has presented a colorable legal question: when USCIS has approved an I-130 "immediate relative" visa petition based on an alien's marriage to a United States citizen, does an IJ, in a parallel removal proceeding, nevertheless have jurisdiction to inquire into the bona fides of the anchoring marriage before granting an adjustment of status? This question is colorable because the answer to it is open. See Pan v. Gonzales, 489 F.3d 80, 84 (1st Cir. 2007) (describing question as "colorable" so long as the argument advanced has "at the very least, . . . some potential

validity"). Thus, the question provides a hook on which our jurisdiction can be hung. See DaCosta v. Gonzales, 449 F.3d 45, 49 (1st Cir. 2006); Cho v. Gonzales, 404 F.3d 96, 98-100 (1st Cir. 2005).

Assured of our jurisdiction, we turn to the BIA's denial of the petitioner's application for an adjustment of status. An adjustment of status under 8 U.S.C. § 1255(a), if granted, "permits certain noncitizens to become [LPRs]." Akwasi Agyei v. Holder, 729 F.3d 6, 9 (1st Cir. 2013). The adjustment-of-status process can be initiated by an immediate relative (such as a spouse), see 8 U.S.C. § 1151(b)(2)(A)(i), through the filing of an I-130 petition, see Neang Chea Taing v. Napolitano, 567 F.3d 19, 21 (1st Cir. 2009). USCIS conducts an investigation, determines whether the alien is an immediate relative of the sponsor, and approves or denies the petition. See id. at 21-22. If USCIS approves an I-130 petition, the alien may then submit an application to adjust her status either to USCIS (if removal proceedings are not pending) or to the immigration court (if removal proceedings are pending). See 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1)(i); Neang Chea Taing, 567 F.3d at 21. At a minimum, approval of such an application requires that the alien be "eligible to receive an immigrant visa," be "admissible to the United States for permanent residence," and have "an immigrant visa . . . immediately available to [her] at the time [her] application is filed." 8 U.S.C. § 1255(a).

- 7 -

Assuming that these threshold requirements are satisfied, the decisionmaker (whether USCIS or the IJ) must then determine, in the exercise of discretion, whether to adjust the alien's status. See id.

In the case at hand, it is undisputed that the petitioner had a visa immediately available to her, thanks to USCIS's approval of the I-130 petition. Thus, the dispute here reduces to whether the petitioner is eligible and admissible. In the petitioner's view, USCIS's approval of the I-130 petition completes the inquiry into whether her marriage is bona fide, and the IJ may not revisit that issue. The government demurs, arguing that when removal proceedings are already in progress, USCIS's evaluation of the bona fides of the anchoring marriage is at most prima facie evidence, and that the ultimate resolution of the issue is for the IJ. This disagreement over the effect of USCIS's determination presents a purely legal question, and "[w]e review such legal questions de novo, subject to established principles of agency deference." DaCosta, 449 F.3d at 49.

The petitioner's assertion — that USCIS's approval of the I-130 petition divests the immigration court of authority to revisit the bona fides of the anchoring marriage — does not withstand scrutiny. When an alien seeks relief from removal, the law obliges the IJ to "determine whether . . . the testimony is credible [and] sufficient to demonstrate that the applicant has

satisfied the applicant's burden of proof." 8 U.S.C. § 1229a(c)(4)(B). This obligation extends to the alien's proof of her eligibility. See id. § 1229a(c)(4)(A)(i).

In carrying out these tasks, the IJ is empowered to "weigh the credible testimony along with other evidence of record." Id. § 1229a(c)(4)(B). If USCIS's approval of an I-130 petition were accorded preclusive effect, the IJ's hands would be tied and he would be prevented from fulfilling his statutory responsibility. See id. Nothing in the text or the structure of the statutory scheme permits us to truncate the IJ's role as suggested by the petitioner.

The allocation of responsibilities envisioned by the petitioner appears even more problematic in light of the regulations. Pertinently, the regulations prescribe that when an alien has been placed in removal proceedings, "the [IJ] has exclusive jurisdiction to adjudicate any application for adjustment of status [that] the alien may file." 8 C.F.R. § 1245.2(a)(1)(i); see id. § 245.2(a)(1) (reiterating USCIS's lack of jurisdiction to adjudicate applications for adjustment of status with respect to aliens in removal proceedings). Exclusive jurisdiction — if it means anything at all — must mean the ability to assess whether the alien is eligible for relief in the first place. Stripping the IJ of authority to review an essential threshold element of an alien's application for relief would hollow

- 9 -

out the IJ's exclusive jurisdiction over the adjudication of the application and, thus, would undercut the regulations.

The case law points in the same direction. Although the question presented is one of first impression in this circuit, we do not write on a pristine page. The Ninth Circuit has examined and expounded upon an identical question. See Agyeman v. INS, 296 F.3d 871 (9th Cir. 2002). In that case, the court of appeals rejected the alien's argument that, once the I-130 "immediate relative" petition was approved, the immigration court could no longer receive evidence questioning the bona fides of the anchoring marriage. See id. at 879 n.2. The court reasoned persuasively that, although "[t]he approved I-130 [petition] provides prima facie evidence that the alien is eligible" for an adjustment of status, the alien must still "prove his eligibility . . . by the preponderance of the evidence" in the immigration court. Id. So viewed, an approved I-130 petition is only a piece of evidence to be introduced before the IJ in the alien's effort to prove eligibility for an adjustment of status. See id.

In an effort to blunt the combined force of the applicable statutory and regulatory structure and the case law, the petitioner relies on the BIA's decision in Matter of Arthur, 20 I. & N. Dec. 475 (BIA 1992).[4] This reliance is mislaid. For

_____

[4] The petitioner also relies on the BIA's decision in In re H-A-, 22 I. & N. Dec. 728 (BIA 1999). That decision, however,

- 10 -

one thing, Matter of Arthur is inapposite. The decision there addressed the question of whether the BIA would grant a motion to reopen for consideration of adjustment of status where the underlying I-130 petition was not yet adjudicated and was based on a marriage entered into after removal proceedings had commenced. See 20 I. & N. Dec. at 479. The features that distinguish Matter of Arthur from the case at hand are obvious. Here — unlike in Matter of Arthur — no motion to reopen was at issue; the anchoring marriage was entered into before removal proceedings had commenced; and the I-130 petition already had been approved. Trying to fit this case into Matter of Arthur's precedential orbit is like trying to force a square peg into a round hole.

There is a second — and even more formidable — reason why Matter of Arthur does not aid the petitioner's cause. Long before the events in this case transpired, the BIA explicitly overruled Matter of Arthur. See In re Velarde-Pacheco, 23 I. & N. Dec. 253, 257 (BIA 2002); see also Conteh v. Gonzales, 461 F.3d 45, 65 (1st Cir. 2006) (noting the BIA's overruling of Matter of Arthur). It strains credulity to suggest that an overruled

_____

rests on the decision in Matter of Arthur and furnishes no independent authority for the proposition that the petitioner urges.

- 11 -

precedent should, through some mysterious alchemy, be given controlling weight.[5]

To say more about this claim of error would be to paint the lily. We hold that when an alien in removal proceedings applies for an adjustment of status based on her marriage to a United States citizen, the IJ has jurisdiction to inquire into the bona fides of the anchoring marriage even if USCIS already has approved an I-130 petition to the alien's behoof.[6] In such a situation, the approved I-130 petition is not irrelevant. An approved I-130 petition from USCIS shows that the alien has a visa available to her and, thus, paves the way for the IJ to reach the issues of eligibility for adjustment of status and admissibility. See 8 U.S.C. § 1255(a); Neang Chea Taing, 567 F.3d at 21. Moreover, the approved I-130 petition may serve as prima facie evidence of the authentic character of the petitioner's marriage (an issue

---

[5] To be sure, Velarde-Pacheco was itself overruled in part by Matter of Avetisyan, 25 I. & N. Dec. 688 (BIA 2012). That overruling, however, did not purpose to reinstate the discredited decision in Matter of Arthur and, so, is of no moment here.

[6] In an earlier case, we wrote that "[o]nce classified as an immediate relative, the alien-spouse becomes eligible to seek an adjustment of his immigration status . . . ." Naeem v. Gonzales, 469 F.3d 33, 36 n.1 (1st Cir. 2006) (dictum). That statement was addressed to a hypothetical application for adjustment of status, filed in the absence of an ongoing removal proceeding. Such an application would be made to USCIS, not to an immigration court, and would not implicate the critical question that the petitioner raises in this case.

relevant to her quest for an adjustment of status). See Agyeman, 296 F.3d at 879 n.2.

Our conclusion that the IJ had jurisdiction to examine the bona fides of the petitioner's marriage does not end our odyssey. As a fallback, the petitioner challenges the IJ's finding that the marriage was a sham. Absent any material error of law — and we discern none here — we review such a finding only to ensure that it is supported by substantial evidence. See Nikijuluw v. Gonzales, 427 F.3d 115, 120 (1st Cir. 2005). This is a "highly deferential standard," id., under which we cannot disturb the agency's determination as long as it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (citation omitted). It follows that such a determination will stand unless "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The alien has the burden of proving the bona fides of an anchoring marriage by a preponderance of the evidence. See Agyeman, 296 F.3d at 879 n.2; see also 8 C.F.R. 1240.8(d). A marriage is bona fide if "at the time that the newlyweds plighted their troth, [the alien] intended to establish a life with [her] spouse." McKenzie-Francisco v. Holder, 662 F.3d 584, 587 (1st Cir. 2011). The record before us contains substantial evidence

from which the IJ reasonably could — and did — find that the petitioner did not prove such an intent.[7]

To begin, the couple married after an acquaintance that spanned no more than two months. Almost immediately thereafter, the petitioner moved out of state for a lengthy period of time, leaving her new husband behind. This sequence of events supports an inference that the petitioner never intended to establish a life with Sui Wah Chan. See Jing Lin v. Holder, 759 F.3d 110, 112-13 (1st Cir. 2014) (upholding determination that marriage was not bona fide based on brief courtship and lack of time spent living together).

The testimony of both the petitioner and Sui Wah Chan buttresses this inference. The petitioner gave materially inconsistent answers regarding where she had lived during the marriage. Importantly, when asked to identify the address that she shared with Sui Wah Chan, she could not do so, claiming that she did not "know how to say the name" of the street. Nor was Sui Wah Chan's testimony helpful to the petitioner's cause. He had never met her son (though he had successfully sponsored the son's visa application) and expressed his belief that the son was still

_____

[7] The petitioner argues that both the IJ and the BIA ignored this test and focused instead on the petitioner's motive for entering into the marriage. The record belies this argument: it makes manifest that the IJ and the BIA laid out the correct test and proceeded to apply it.

living in China. In fact, the petitioner's son had been residing in the United States for at least a year, if not more, before the date on which Sui Wah Chan testified. The couple's lack of familiarity with the most basic details of their allegedly shared life provides powerful evidence that they did not intend to establish a life together. See McKenzie-Francisco, 662 F.3d at 587.

There is more. Both the petitioner and Sui Wah Chan testified, in effect, that their marriage was an arrangement. Sui Wah Chan stated: "I wanted to marry her because I wanted someone . . . to help me . . . . In return, I would help her with her green card."[8] The petitioner confirmed this account. The IJ and the BIA were entitled to treat their mutual admission that the petitioner had entered into the marriage to obtain an immigration benefit as evidence that the marriage was not bona fide. Cf. Rodriguez v. INS, 204 F.3d 25, 27, 28 (1st Cir. 2000) (considering an alien's statement that he married only to obtain a green card "very powerful evidence that the original intent was to use marriage as a device to evade the immigration laws").

Lastly, the petitioner lacked the sort of documentary proof that might have led a factfinder reasonably to conclude that

_____

[8] "Green card" is a colloquial term for an "employment authorization card." Arevalo v. Ashcroft, 344 F.3d 1, 6 (1st Cir. 2003).

she and Sui Wah Chan intended to make a life together. See Reynoso v. Holder, 711 F.3d 199, 207 (1st Cir. 2013) (upholding a determination that marriage was not bona fide where the alien's documentary evidence was "limited" and lacked detail). For example, despite asserting that she and Sui Wah Chan held a joint bank account, she presented no corroboration of the existence of such an account. Her only documentary proof of the sort of comingling of assets that might have suggested that they intended to establish a life together was a single year of federal income tax filings (2011), which showed that she and Sui Wah Chan filed jointly (as husband and wife) for that one year. The petitioner did not explain the absence of similar filings for the five earlier years of the marriage.

In a similar vein, the record is thin with respect to documentary evidence showing that the couple lived together during the marriage. In this regard, the petitioner's sole proffer was a form letter from the Boston Housing Authority that listed her as a member of Sui Wah Chan's household. The IJ and the BIA could reasonably find that isolated form letter to constitute no proof.

To sum up, the evidence offered by the petitioner in support of the bona fides of the anchoring marriage was weak. Given the paucity of the petitioner's proffer, the agency's "sham marriage" determination was consistent with the "reasonable, substantial, and probative evidence on the record considered as a

- 16 -

whole." Elias-Zacarias, 502 U.S. at 481 (citation omitted).
Surely, this chiaroscuro record does not compel a conclusion
contrary to that reached by the IJ and the BIA.[9] We therefore
reject the petitioner's fact-based challenge.

## III. CONCLUSION

We need go no further. For the reasons elucidated above,
the petition for judicial review is denied.


**So ordered.**

---

[9] Given this conclusion, we need not address the petitioner's
remaining claims of error. Those claims relate to the IJ's
findings concerning admissibility and waiver of inadmissibility —
issues rendered moot by the supportable determination that the
petitioner was not eligible for an adjustment of status.