# Matter of Jim Willis KAGUMBAS, Respondent

*Decided October 13, 2021*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

An Immigration Judge has the authority to inquire into the bona fides of a marriage when considering an application for adjustment of status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (2018).

FOR RESPONDENT: James F. Epo, Esquire, Houston, Texas

FOR THE DEPARTMENT OF HOMELAND SECURITY: Meggan G. Johnson, Associate Legal Advisor

BEFORE: Board Panel: MULLANE, COUCH, and OWEN, Appellate Immigration Judges.

MULLANE, Appellate Immigration Judge:

In a decision dated January 10, 2018, the Immigration Judge denied the respondent's application for adjustment of status under section 245(a) of the Immigration and Nationality Act, 8 U.S.C. § 1255(a) (2012). The respondent appealed from that decision. Both the respondent and the Department of Homeland Security ("DHS") submitted briefs on appeal and we heard oral argument on February 20, 2020.[1] The appeal will be dismissed, in part, and sustained, in part. The record will be remanded for further proceedings.

## I. PROCEDURAL HISTORY AND FACTS

The respondent, a native and citizen of Kenya, was admitted to the United States as a nonimmigrant on an F-1 student visa on August 26, 2006. His nonimmigrant status was terminated on October 17, 2007, because he failed

---

[1] Following oral argument, Appellate Immigration Judge Edward F. Kelly retired from the Board of Immigration Appeals, and Deputy Chief Appellate Immigration Judge Charles Adkins-Blanch withdrew from the panel to serve as Acting Deputy Director of the Executive Office for Immigration Review. Appellate Immigration Judges V. Stuart Couch and Sirce E. Owen replaced them on the panel. Both Appellate Immigration Judges Couch and Owen have familiarized themselves with the record of proceedings, including a transcript of the oral argument.

to maintain full-time study at San Jacinto College. He remained in the United States without authorization. The DHS served the respondent with a notice to appear charging him with deportability pursuant to section 237(a)(1)(B) of the Act, 8 U.S.C. § 1227(a)(1)(B) (2012), for remaining in the United States longer than permitted. The respondent conceded the charge but filed an application for adjustment of status with the Immigration Court.

The respondent's adjustment of status claim is based on his marriage to his United States citizen wife, whom he married on July 23, 2013. His wife filed a Form I-130, Petition for Alien Relative, on the respondent's behalf, which was approved by the United States Citizenship and Immigration Services ("USCIS"). The respondent filed an application for adjustment of status with the USCIS. However, while the application was pending, the DHS commenced removed proceedings.

At the initial hearing before the Immigration Judge on November 9, 2016, the respondent sought to terminate removal proceedings to apply for adjustment of status based on an approved I-130 visa petition as the spouse of a United States citizen before the USCIS. After the DHS counsel indicated that she did not oppose termination, the Immigration Judge offered the respondent the option of a hearing on the adjustment application in Immigration Court in July or termination of proceedings so that the respondent could pursue adjustment with the USCIS. The respondent, through counsel, elected to pursue his adjustment of status application in Immigration Court, because the Immigration Court could hear the request sooner.[2]

The Immigration Judge held a merits hearing on the respondent's application for adjustment of status on July 26, 2017. At the hearing, the respondent, his wife, and his mother-in-law testified.

The respondent testified that he resides in Houston, Texas, his building number is 1117, his apartment number is 2072, and he married his wife on July 23, 2013. He said he worked with his mother-in-law and she introduced him to her daughter. He testified that he has lived in an apartment with his wife since they were married. The respondent said that he and his wife filed taxes jointly in 2013 and 2014, and filed as "married but separate" in 2015. The respondent also explained that he has one son, through a relationship with an ex-girlfriend, and that his son lives with him during the summer months.

---

[2] Nothing in this decision prohibits parties from agreeing to dismiss proceedings so that a respondent may pursue adjustment of status before the USCIS. *See generally Matter of S-O-G- & F-D-B-*, 27 I&N Dec. 462, 466–67 (A.G. 2018) (discussing the distinction between dismissal and termination).

The respondent's mother-in-law testified that she resides in Houston, Texas. She said that the respondent and her daughter have been married for about 4 years and that she worked with the respondent at the Dupont Healthcare Center for about 5 years. She introduced her daughter to the respondent at a barbeque and they dated for about 1 year before their marriage.

The respondent's wife, who was 25 years old at the time of the hearing, indicated she was unemployed but had previously worked at a nursing home and had a business selling clothes and hair. She testified that she met the respondent through her mother and married him about 4 years before the hearing. The respondent's wife testified that she and the respondent resided in building number 11710 and apartment 1012. The Immigration Judge sought to clarify the apartment number, and the respondent's wife indicated it was 2012. When the Immigration Judge asked again about the apartment number, she indicated it was 20112, 112, or 212. She also indicated that she could not pronounce the name of the street where she lived with the respondent. When asked how long she lived on that street, she said, "I was there, I was just there, my mom didn't move back into [indiscernible] for two months." When the DHS asked the respondent's wife why she was not living with the respondent, she stated that "I lived with, I was living with my mom. We had to take [care] of my brother, you can check my tax records." She also testified that she lived with the respondent 6 months before the hearing. When she was asked how long she lived with the respondent during their marriage, she said, "I lived with him for maybe [2] years and [8] months." She also indicated that she lived with him for 2 years after they were married and then returned to reside with her mother. The respondent's wife also indicated that when the respondent's son stays with the respondent, she stays with her mother. The respondent's wife stated that she does not know the name of the mother of the respondent's son.

After the hearing, the Immigration Judge issued a written decision. The Immigration Judge found the witnesses not credible. She pointed out that the respondent and his wife testified to different dates for the marriage and noted that the respondent's wife "was asked several times and each time responded with 2014." The Immigration Judge found that their testimony also diverged on how long they were living together in the apartment: The Immigration Judge found that the respondent said "since we got married," but his wife "testified that she only lived with [the] [r]espondent for a year and [8] months and just recently moved back in with him for [2] months." The Immigration Judge pointed out that the respondent's wife also testified that "whenever [the] [r]espondent's son is in the residence she leaves to go stay with her mother." The Immigration Judge relied on the inconsistent testimony of the

respondent's wife about the correct apartment number, "and her inability to remember the address of the apartment in which she claims to reside with her husband." The Immigration Judge found that the respondent's testimony was internally consistent but that she would not credit the claim "that the marriage was bona fide at the time of inception due to [his wife's] contradictory testimony." She noted that without credible testimony, the respondent needed corroborative evidence, which he did not provide.

The Immigration Judge denied the respondent adjustment of status because she concluded that his marriage to his wife was not bona fide. She found that "the marriage was entered into solely to confer an immigration benefit." She noted that the respondent has "not submitted any evidence such as bank statements, photographs, or lease agreements to support the application." The only document that supported the marriage claim was a "2014 tax return" that was jointly filed. The respondent could not explain his wife's "2015 and 2016 tax returns in which [she] filed her taxes separately" and indicated she was "head of household at her mother's address." The Immigration Judge also pointed to the testimony of the respondent's wife where she could not remember the address of the alleged marital home and did not know the respondent's parents' names or the correct date of the marriage. For all these reasons, the Immigration Judge found "that the [r]espondent's marriage to [his wife] was not bona fide at its inception, and that they entered into the marriage for the purpose of procuring an immigration benefit, namely, Adjustment of Status for [the] [r]espondent." She denied the respondent's application because he was not statutorily eligible.[3]

## II. ANALYSIS

### A. Immigration Judge's Authority

The first issue in this case is whether an Immigration Judge can deny adjustment of status to a respondent who has an approved I-130 visa petition based on the Immigration Judge's determination that the respondent has not shown that the marriage is bona fide.[4] We review this issue de novo. *See* 8 C.F.R. § 1003.1(d)(3)(ii) (2021). We begin our analysis with the statutory provision at issue in this case, namely section 245(a) of the Act. Section

---

[3]  The Immigration Judge did not reach whether the respondent should be granted or denied adjustment of status in the exercise of discretion. We also do not consider this issue.
[4]  There is no dispute that an Immigration Judge lacks authority to cancel or revoke an approved I-130 visa petition. *Cf.* 8 C.F.R. § 205.2 (2021) (stating that DHS officers may revoke an approved visa petition).

245(a) provides that the Attorney General may, in the exercise of discretion, adjust the status of an applicant who was inspected and admitted or paroled into the United States to that of a lawful permanent resident.  The applicant must file an application for adjustment of status, must be eligible to receive an immigrant visa that is immediately available, and must be admissible to the United States.  There are certain bars to adjustment of status that are not relevant here because the respondent is classified as an "immediate relative." *See* section 245(c) of the Act.

Applications for adjustment of status can be adjudicated by either an Immigration Judge or the USCIS.  *See* 8 C.F.R. §§ 245.2(a)(1), 1245.2(a)(1) (2021).  The adjudicator depends on the circumstances of the case. Immigration Judges have exclusive jurisdiction over applications filed for adjustment of status by respondents in removal proceedings, with the exception of "arriving aliens."  8 C.F.R. § 1245.2(a)(1)(i), (ii).  The respondent is not an "arriving alien," and so the Immigration Judge had exclusive jurisdiction over his application for adjustment of status.

An applicant for adjustment of status, in this case the respondent, has the burden of proof, which includes showing eligibility for the requested relief. *See* section 240(c)(4)(A)(i) of the Act, 8 U.S.C. § 1229(a)(c)(4)(A)(i) (2018) (stating that an applicant applying for relief or protection has the burden to satisfy "the applicable eligibility requirements").  Furthermore, the Immigration Judge must "determine whether or not the testimony is credible, is persuasive, and refers to specific facts sufficient to demonstrate that the applicant has satisfied the applicant's burden of proof."  Section 240(c)(4)(B).  The Immigration Judge must weigh "the credible testimony along with other evidence of record" to determine whether the respondent has satisfied the burden of proof. *Id.*  The Immigration Judge's assessment of whether the respondent has met his burden of proof does not become merely a ministerial act simply because there is an approved I-130 visa petition.

As noted above, the Immigration Judge has "exclusive jurisdiction" over the respondent's application for adjustment of status.  8 C.F.R. § 1245.2(a)(1).  If the respondent were not in removal proceedings and exclusive jurisdiction over his application rested with the DHS, there would be no credible claim that the approved I-130 visa petition prohibited the DHS from considering the bona fides of the marriage as part of the adjustment of status application.  The respondent makes no argument to the contrary.  It follows, therefore, that an Immigration Judge must have the same authority—no less and no more—by virtue of the exclusive jurisdiction to adjudicate an adjustment of status application.  The regulations do not

provide otherwise, and we see no basis to construct a different adjudication regime based on the adjudicator.

Our conclusion here is consistent with long-standing precedent. In *Matter of Bark*, 14 I&N Dec. 237, 240 (BIA 1972), *rev'd on other grounds by Bark v. INS*, 511 F.2d 1200 (9th Cir. 1975), we held that "this Board and the special inquiry officers are not bound by [a] prior determination of a visa petition that an alien is entitled to a particular classification." We reasoned that just as a "visa petition procedure shall not be construed as entitling an immigrant to enter the United States," the same is true for an adjustment of status application. *Matter of Bark*, 14 I&N Dec. at 240. We acknowledge that the special inquiry officer in *Matter of Bark* "found that respondent had not established a *bona fide* marriage and that he did not warrant the favorable exercise of discretion," *id.* at 238, whereas the Immigration Judge here did not deny the adjustment of status application in the exercise of discretion. However, we do not read *Matter of Bark* as only authorizing a denial in the exercise of discretion, and its reasoning and holding make this point clear. *Cf. Matter of Koloamatangi*, 23 I&N Dec. 548, 549–51 (BIA 2003) (holding that a respondent could not qualify for cancellation of removal based on lawful permanent residence that was fraudulently obtained).

Our conclusion is further fortified by the two courts of appeals that have considered this legal issue. In *Wen Yuan Chan v. Lynch*, 843 F.3d 539, 541 (1st Cir. 2016), the United States Court of Appeals for the First Circuit held that "the bona fides of the anchoring marriage were properly before the immigration court" when considering an application for adjustment of status. In affirming the Board's holding that an approved I-130 visa petition does not strip the Immigration Judge of jurisdiction to consider whether the marriage was bona fide, the court of appeals relied on the Immigration Judge's responsibility to determine whether the applicant has met her burden of proof and the applicant's burden to show eligibility. *Id.* at 543–45. The court pointed out that "[i]f the USCIS's approval of an I-130 petition were accorded preclusive effect, the [Immigration Judge's] hands would be tied and he would be prevented from fulfilling his *statutory* responsibility." *Id.* at 543 (emphasis added). The Ninth Circuit reached the same conclusion regarding this issue in *Agyeman v. INS*, 296 F.3d 871, 879 n.2 (9th Cir. 2002). No court of appeals has reached a contrary conclusion.

For all these reasons, we conclude that an Immigration Judge has the authority to inquire into the bona fides of the marriage when considering an application for adjustment of status. This does not mean that the approved I-130 visa petition is irrelevant. *See Wen Yuan Chan*, 843 F.3d at 545. Indeed, it is some evidence of the validity of the marriage, but it is not

dispositive.  An Immigration Judge will need to consider all of the evidence in the record before making a determination as to eligibility for relief.

## B.  Inadequate Transcript for Review of the Immigration Judge's Denial of Adjustment of Status

The next question in this case is whether the Immigration Judge properly denied the respondent's application for adjustment of status.  While the Board and an Immigration Judge rely on the same record for adjudicating a case or an appeal, a written transcript of the proceedings before an Immigration Judge is only created after an appeal is filed.  *See* 8 C.F.R. § 1003.1(e)(3) (2021).  Thus only the Board reviews a transcript of the testimony at an immigration hearing.  The Immigration Judge does not see (or review) the transcript before issuing a decision.  This is so even when, as in this case, the Immigration Judge issued a written decision a few months after the hearing.

A complete and accurate transcript is therefore essential for the Board to adjudicate an appeal that turns on witness testimony.  *See generally* 8 C.F.R. § 1003.36 (2021) ("The Immigration Court shall create and control the Record of Proceeding.").  This does not mean that the transcript has to be perfect, but it needs to be complete enough for the Board to meaningfully review an appeal.  Often, a transcript with testimony marked as indiscernible will not require a remand.  For example, if there are only a few words that are indiscernible or the indiscernible testimony is not critical to the outcome of the case, then remand is not necessary.

The transcript that was produced from the hearing before the Immigration Judge has significant problems.  There are multiple places in the transcript where the testimony of the respondent's wife is listed as indiscernible.  *See* Tr. at 56-58, 60, 62, 64, 67, 77-78, 81, 84-85.  The respondent's wife's testimony is essential to this case because her testimony is the main reason that the Immigration Judge concluded that the marriage was not bona fide.  Accordingly, this is not the type of case that we can adjudicate without a remand to the Immigration Judge.

A new hearing is not required in all cases where significant testimony is marked as indiscernible.  Even when some testimony is marked as indiscernible by the transcriber, this does not mean it was actually indiscernible to the Immigration Judge at the time of the hearing.  The Immigration Judge may have heard and understood what the witness said, but it was not recorded well and thus was indiscernible to the transcriber.  Another possibility is that the witness's testimony was indiscernible for a reason, such as the witness was mumbling or otherwise not clearly

articulating herself.  In other words, the witness was indiscernible and the Immigration Judge knew it.  This case appears to have both kinds of indiscernible statements.  For instance, on page 58 of the transcript, it appears that the Immigration Judge understood what the respondent's wife said when asked about when she first met the respondent.  On page 60 of the transcript, however, the Immigration Judge says:  "I don't understand what you said.  If someone listens to what we're doing here today, they make a record or transcript, so they have to understand each word that you say.  So some of your words are running together."

The DHS, in its brief, acknowledged that there are many places in the transcript where the testimony of the respondent's wife is indiscernible and recognized that a remand might be warranted.  Given the sheer number of indiscernible statements in the transcript, and despite the Immigration Judge's best efforts to create a record that could be transcribed clearly, we need to remand the record.

On remand, the Immigration Judge may be able to look at the transcript (which, as noted above, she will see for the first time) and revise her decision to clarify what she did (or did not) rely upon.  She may also need to get input from the attorneys in order to clarify the record.  Or she may need to conduct a part of the hearing again.  From our limited vantage point, we cannot decide which of these options the Immigration Judge needs to pursue and we place no limitations upon the Immigration Judge on remand.  We simply cannot decide whether the Immigration Judge properly denied the respondent's application for adjustment of status based upon the respondent's failure to show that his marriage is bona fide until the indiscernible statements in the transcript are clarified or the Immigration Judge's decision is revised.

## III.  CONCLUSION

The Immigration Judge has the authority to deny adjustment of status to a respondent who has an approved I-130 visa petition if a respondent has not shown that the marriage underlying the visa petition is bona fide.  We remand the record for further proceedings to clarify those portions of the transcript that are currently identified as indiscernible.

**ORDER:**  The appeal is dismissed, in part, and sustained, in part.

**FURTHER ORDER:**  The record is remanded to the Immigration Judge for further proceedings consistent with the foregoing opinion and for the entry of a new decision.