# United States Court of Appeals
## For the First Circuit

No. 23-1156

ALAIN GLODY CIRHUZA BADOSE,

Petitioner,

v.

MERRICK B. GARLAND, Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Rikelman, Lipez, and Thompson,
<u>Circuit Judges</u>.

Gregory Romanovsky, with whom Romanovsky Law Offices was on brief, for petitioner.

Jennifer A. Bowen, Trial Attorney, Office of Immigration Litigation, with whom Brian M. Boynton, Principal Deputy Assistant Attorney General, Civil Division, and Anthony C. Payne, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

December 19, 2024

**LIPEZ**, <u>**Circuit Judge**</u>. Soon after arriving in the United States in 2014 on a student visa, petitioner Alain Glody Cirhuza Badose applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). In 2019, an Immigration Judge ("IJ") denied his claims for relief based on an adverse credibility determination or, alternatively, because Badose had failed to show a sufficient nexus between the harm he described and a protected ground. About two and a half years later, while his appeal to the Board of Immigration Appeals ("BIA") was pending, Badose married a U.S. citizen. He then filed a motion to remand to the IJ to consider an adjustment of status based on the marriage -- an independent form of immigration relief now open to him. The government did not oppose the motion. The following month, however, the BIA denied his remand request and affirmed the IJ's removal order, stressing that Badose -- with his "lack of candor" and documented history of "lying to immigration officials" -- was fully "aware that his [immigration] status was in jeopardy" when he wed.

Badose now contends we should vacate the BIA's decision in its entirety because, among other things, the BIA arbitrarily departed from a consistent practice of granting unopposed remand requests for consideration of adjustment-of-status relief. He also asserts that the BIA engaged in impermissible factfinding, and thereby legally erred, when it all but said explicitly his

marriage was a sham.  We agree.  Concluding that the BIA made two errors of law when it denied Badose's motion to remand, we grant Badose's petition for review.

I.

We draw the relevant background from the administrative record, though, in doing so, "we need not detail the totality of [Badose's] dense history before various immigration agencies and entities in order to inform and explain today's outcome." Manguriu v. Garland, 86 F.4th 491, 493 (1st Cir. 2023).

## A.  Badose's U.S. entry and merits hearing

Badose, a national of the Democratic Republic of the Congo ("DRC"), was admitted to the United States in January 2014 on an F-1 student visa.  Instead of going to school, however, Badose filed an application with the U.S. Citizenship and Immigration Services ("USCIS") for asylum and withholding of removal -- a Form I-589 -- and also sought protection under the CAT.  In his application, he claimed that he would be in danger in the DRC because of his political opinion or affiliation. See 8 C.F.R. § 1208.13(b).  Removal proceedings were then initiated, with Badose conceding removability as charged.  See 8 U.S.C. § 1227(a)(1)(C)(i) (non-citizen failing to maintain terms or conditions of nonimmigrant status under which admitted, i.e., student).

- 3 -

At his merits hearing before the IJ in October 2019, Badose testified as the sole witness in support of his claims for relief. He averred that he and his father were government employees but also active members and supporters of "the main opposition [political] party" in the DRC; that both were arrested because of their challenges to "corruption"; and that Badose was then detained for several days, during which he was separated from his father, denied food and water, and repeatedly beaten. Badose explained that a soldier allowed him to escape prison, but only after he witnessed the execution of two fellow inmates and was threatened that he would be next unless he relinquished money and compromising information about his father. In his testimony, Badose repeated several times that, "to this day," he has no knowledge of his father's whereabouts or wellbeing. He also said he feared he would be killed by government officials and would put family members in danger if he returned to the DRC.

On cross-examination, however, Badose conceded that, on each of his visa application forms, he had listed his father's contact information and indicated that his father was paying for his travel to the United States. He also marked on these forms that he had never been arrested in the DRC, despite his contrary testimony at the hearing,[1] and admitted that he had been denied

_____

[1] Badose has since sought to clarify these answers, explaining, for example, that family money paid for his travel,

- 4 -

two prior visas due to questions about the legitimacy of proffered bank statements.[2]  Finally, Badose also admitted that he had no plans to go to school when he travelled to the United States on the student visa, and acknowledged that there had been a political transition in the DRC after he left, with the opposition party securing some key leadership positions.

## B.  The IJ's decision

In late 2019, the IJ issued a decision rejecting Badose's direct testimony in its entirety and denying his request for relief from removal.  In explaining the adverse credibility finding, the IJ noted that "[m]uch of [Badose's] testimony was inconsistent with his three written [affidavits], his asylum application, his visa interviews, and his asylum interview."  The IJ then concluded that "the cumulative effect of such inconsistencies calls into question the credibility of the entire claim."  Elaborating, the IJ identified various portions of Badose's testimony that were internally contradictory (such as Badose's description of his arrest and his subsequent contact with his father), "implausible" (such as the details of his prison escape), or both (such as the

---

that he has spoken with his father in recent years only in brief cell phone conversations that his father initiated, and that he reasonably understood the arrest question on the forms to be asking whether he had ever been "lawfully arrested" in the DRC (the truthful answer to which, he maintains, is "no").

[2] The record indicates that these bank statements were ultimately verified as authentic.

suspiciously condensed timeline of his government employment, arrest, and departure from the DRC).

Having thus discredited the facts Badose offered in support of his request for immigration relief, the IJ denied his claims for asylum, withholding of removal, and protection under the CAT. The IJ also found, in the alternative, that Badose's asylum and withholding-of-removal claims failed because he did not sufficiently establish a nexus between any harm he experienced and a protected ground (i.e., his political opinion or membership in a particular social group); and that his CAT protection claim failed due to insufficient evidence that any torture he experienced was done or instigated by government officials. Badose filed an appeal with the BIA in early 2020.

## C. Events during the pendency of Badose's appeal

In August 2020, the BIA initially dismissed Badose's appeal as untimely. However, Badose successfully asserted a "deficient representation" claim, and the BIA reinstated his appeal in April 2022.

In the meantime, in May 2021, Badose married Workenesh Gregory Thier, a U.S. citizen, with whom he also had a child later that year. Shortly thereafter, Thier filed a marriage-based visa petition -- a Form I-130, Petition for Alien Relative -- on behalf of Badose, along with various forms of proof of the "bona fides" of the marriage, including their marriage certificate and a jointly

filed tax return for 2021.  The USCIS approved the I-130 petition on October 28, 2022.

At that time, Badose -- with his appeal to the BIA pending -- remained "in removal proceedings."  8 C.F.R. § 1245.2(a)(1).  Because the I-130 approval made him prima facie eligible for "adjustment of status" to "that of an alien lawfully admitted for permanent residence," 8 U.S.C. § 1255, and on the assumption that "the [IJ] hearing the proceeding ha[d] exclusive jurisdiction to adjudicate" his adjustment-of-status application, 8 C.F.R. § 1245.2(a)(1), Badose filed a motion to remand his case from the BIA to the IJ. In that December 2022 motion, Badose cited the USCIS's "approv[al of] the I-130 petition filed by [his] U.S. citizen wife" as evidence both "material" and "not available" at the time of his October 2019 hearing or the IJ's December 2019 removal order.  Asserting that the relief sought -- adjustment of status to that of a lawful permanent resident -- was "on the basis of circumstances that have arisen subsequent to the hearing," Badose requested a remand for the IJ to consider "this new evidence and [Badose]'s eligibility for relief."

The government filed no response to Badose's appeal or remand motion.

**D.  The BIA's decision**

In January 2023, the BIA issued a written decision affirming the IJ's 2019 denial of Badose's claims and denying the

- 7 -

motion to remand.  With respect to Badose's claims for asylum, withholding of removal, and CAT protection, the BIA upheld the IJ's adverse credibility finding as not clearly erroneous, noting that the IJ had identified numerous discrepancies between Badose's testimony and the documentary record.[3]  The BIA concluded that the supportable adverse credibility determination foreclosed all three forms of relief, and it affirmed the 2019 removal order on that basis without reaching the IJ's alternative findings on the lack of connection to statutorily protected grounds.[4]

The BIA then considered and denied Badose's unopposed request for remand to seek an adjustment of status.  The BIA explained its denial as follows:

> [Badose]'s marriage occurred, and visa petition filed, after the Immigration Judge's denial, and thus [Badose] was aware that his status was in jeopardy.  Furthermore, as we have found no clear error in the Immigration Judge's adverse credibility finding, which included a finding of lying to immigration officials to obtain a visa, [his] lack of candor is a further negative discretionary

---

[3] The BIA assessed the IJ's adverse credibility determination on a range of discrete issues, including: the identity (and political affiliation) of the arresting officials in 2013; Badose's "unplausible" release by the sympathetic guard; Badose and his father's discovery of governmental corruption preceding their arrest; Badose's professed lack of contact with his father; the nature of Badose's short governmental employment; and Badose's overall "lack of candor" in the U.S. visa application process.

[4] Badose also sought relief under the CAT based on independent evidence (i.e., DRC country conditions in 2019), but the BIA found that claim waived.  Given our disposition here, we need not delve into this claim.

factor.  Beyond his recent marriage, [Badose] has not identified any other positive equities or extraordinary factors that would overcome the negative factors identified above.  As such, we decline to remand as a matter of discretion.

Badose now seeks review of the BIA's final order of removal, specifically asking us to vacate the BIA's denial of his remand motion and arguing that the adverse credibility finding upheld by the BIA is unsupported by the record.[5]  As it is dispositive here, we address only Badose's assertion that the BIA abused its discretion in denying his request for remand.

**II.**

**A.  Standard of Review**

We apply the "highly deferential abuse-of-discretion standard" to the BIA's denial of Badose's remand motion. Moreno v. Garland, 51 F.4th 40, 46 (1st Cir. 2022) (quoting Adeyanju v. Garland, 27 F.4th 25, 51 (1st Cir. 2022)).  That is, we will "overturn" such decisions only "when 'the petitioner can establish that the BIA made an error of law or acted in a manner that is fairly characterizable as arbitrary and capricious.'"  Id. (quoting Lee v. Barr, 975 F.3d 69, 76 (1st Cir. 2020)).

---

[5] Following oral argument, we referred Badose's case to the First Circuit Civil Appeals Management Program ("CAMP").  The parties subsequently informed the court that they were unable to resolve the case.

- 9 -

**B. Discussion**

To prevail on his remand motion before the BIA, Badose had to make three showings: (1) that the evidence he was seeking to offer was "material" and previously unavailable; (2) that this new evidence likely would "change the result in the case"; and (3) "prima facie eligibility" for the relief sought, i.e., an adjustment of status. Id.; see also Rivera-Medrano v. Garland, 47 F.4th 29, 35 (1st Cir. 2022). A noncitizen who entered the United States illegally may apply for an adjustment of status to lawful permanent resident if, inter alia, "an immigrant visa is immediately available to [him] at the time his application is filed." 8 U.S.C. § 1255(i); see also Patel v. Garland, 596 U.S. 328, 332 (2022) ("[T]he Attorney General has discretion to adjust the status of an eligible noncitizen who entered the United States illegally to that of lawful permanent resident, forgiving the illegal entry and protecting the noncitizen from removal on that ground. . . . [T]he Attorney General has delegated to immigration judges the ability to grant relief from removal.").

As Badose correctly points out, his 2021 marriage to a U.S. citizen and the USCIS-approved I-130 rendered him prima facie eligible for an adjustment of status. See Wen Yuan Chan v. Lynch, 843 F.3d 539, 545 (1st Cir. 2016).[6] Relying on this prima facie

---

[6] That is to say, the "approved I-130 petition from USCIS show[ed] that" Badose now had "a visa available to [him]," giving

- 10 -

eligibility, Badose asserts that the BIA abused its discretion in rejecting his remand request by committing a half dozen material errors of law.  As one such error alone warrants reversal, see Khalil v. Garland, 97 F.4th 54, 61 (1st Cir. 2024), we focus our attention here on only two: the BIA's arbitrary departure from a settled course of adjudication and the BIA's impermissible factfinding.

### 1.  The BIA's departure from a well-established practice

Badose asserts that the BIA inexplicably departed from what he characterizes as a "settled course" of routinely granting unopposed remand requests so that petitioners in removal proceedings may pursue adjustment of status.  See Thompson v. Barr, 959 F.3d 476, 484, 490 (1st Cir. 2020) (vacating BIA decision based on conclusion that "the BIA departed from its settled course of adjudication"); Adeyanju, 27 F.4th at 49 n.25 (observing that "the BIA's variation from th[e] 'settled course' can be a ground of

---

him another, independent basis for pressing his "eligibility for adjustment of status and admissibility." Wen Yuan Chan, 843 F.3d at 545.  However, the "IJ has jurisdiction to inquire into the bona fides of the anchoring marriage even if USCIS already has approved an I-130 petition to the alien's behoof." Id.  Moreover, the USCIS view of the marriage as bona fide does not mean that the IJ or the BIA, in turn, must view the marriage as a positive equity in its own decision making.  See Adeyanju, 27 F.4th at 42 (holding that the BIA continues to retain "de novo legal authority to assign various weights -- positive or negative, heavy or little -- to those undisputed underlying facts in its discretionary calculus").

legal error" (quoting Perez-Trujillo v. Garland, 3 F.4th 10, 22 (1st Cir. 2021))).

To support this contention, Badose identifies more than a dozen orders issued during a roughly fifteen-year period in which the BIA -- seemingly as a matter of course -- granted unopposed motions akin to his. See, e.g., In re Lopez-Castillo, A206-237-859, 2018 Immig. Rptr. LEXIS 10954, *2 (Nov. 1, 2018) ("[W]e note that the [government] has not responded to the motion or the appeal. Accordingly, the following order [to grant the motion to remand] will be entered." (citation omitted)); In re Toure, A087-183-369, 2012 Immig. Rptr. LEXIS 5713, *1 (Aug. 10, 2012) (similar). At least some of these orders granting remand involved petitioners who, like Badose, were facing removal due to adverse credibility determinations made in earlier proceedings. See, e.g., In re Grullon, A096-762-369, 2015 Immig. Rptr. LEXIS 7844, *2-3 (Mar. 10, 2015) (granting remand to pursue adjustment of status based on daughter's immigrant visa petition despite record evidence petitioner previously married for immigration benefits). The government brushes these cases aside by claiming they are "inapposite" without acknowledging these relevant procedural and factual analogies.

Further, in responding in this way, the government does not assert that Badose's invocation of such a routine practice by the BIA (granting unopposed remand requests so that petitioners in

removal proceedings may pursue adjustments of status) is incorrect. The government has therefore forfeited any legal challenge to Badose's settled-course argument as well as any factual claim that Badose's characterization of the BIA's practice is inaccurate, incomplete, or otherwise misleading. See Lopez-Reyes v. Garland, No. 22-1014, 2023 WL 8919744, at *2 (4th Cir. Dec. 27, 2023) ("[T]he Government has forfeited a defense . . . because it did not raise the defense in its brief or during oral argument."); Alvarez v. Lynch, 828 F.3d 288, 295 (4th Cir. 2016) (the government forgoes consideration of defense theory by "inexplicably ignor[ing] [an appellant's] arguments in its response brief" and "outright fail[ing] to join in the adversarial process"). Cf. Alejos-Perez v. Garland, 93 F.4th 800, 807 (5th Cir. 2024) ("[Petitioner]'s failure to raise these authorities in his opening brief forfeits his ability to rely on them, as the government had no ability to respond."); Laparra-Deleon v. Garland, 52 F.4th 514, 523 (1st Cir. 2022) (observing that the government may waive issues not raised before the BIA).

However, in a notably odd argument, the government instead suggests that we should dismiss Badose's settled-course argument based on precedent from other circuits holding that the BIA abuses its discretion by denying motions to remand solely because the government opposed the motion with no analysis of the merits of that opposition. See, e.g., Melnitsenko v. Mukasey, 517

- 13 -

F.3d 42, 51 (2d Cir. 2008).  In other words, the government is saying that because the BIA may not automatically <u>deny</u> a motion to remand based only on the government's unreasoned opposition, the BIA cannot be required to automatically <u>grant</u> a motion when there is no government opposition at all.

But the issue here is not whether the BIA is required by law to grant a motion when there is no government opposition.  The question is whether there is a "settled course" by the BIA of routinely granting such unopposed remand requests so that petitioners in removal proceedings may proceed for an adjustment of status.  As a matter of law, it is arbitrary and capricious for the BIA to suddenly and "inexplicably depart[] from established policies, including its own precedents."  <u>Adeyanju</u>, 27 F.4th at 51 (internal quotation marks omitted).  Badose asserts that this is exactly what happened here.  As noted, the government has not refuted that proposition.  Its invocation of an objection by the courts to the BIA's practice on some occasions of denying motions to remand just because the government opposed it (even when the government provided little to no explanation as to why the case should not be remanded) is entirely beside the point.  Moreover, <u>Melnitsenko</u> and similar cases reflect a judgment by the courts to safeguard a fair process for noncitizens navigating immigration proceedings by ensuring that the BIA considers on the merits the factors supporting the noncitizen's eligibility for remand.

Hence, the holdings in those cases are far more consistent with Badose's position here than the government's.

We also think it noteworthy that the government not only failed to oppose the remand request, but also did not respond to Badose's appeal on the merits. Although the timing of the government's knowledge of Badose's marriage and his intent to seek a remand is unclear, its failure to respond on the merits of his appeal would be understandable if the government had anticipated that the case would be remanded as a matter of course.

We therefore conclude that the BIA's rejection of Badose's unopposed remand request was an arbitrary and capricious departure from its settled course of adjudication. See Thompson, 959 F.3d at 490. That error on its own warrants our vacating the BIA's decision, with instructions on remand to return the case to the IJ for consideration of Badose's request for adjustment of status. As we explain below, however, the BIA's refusal to grant the remand motion was legally flawed for another reason, and that error would require us to vacate the BIA's decision regardless of its routine handling of unopposed remand motions. Hence, we proceed to discuss this additional legal error by the BIA with respect to factfinding in the event of further proceedings before the BIA in this case.

## 2. The BIA's factfinding on the marriage

Badose contends that the BIA's refusal to remand was premised in part on its implicit finding that his marriage was a sham, and he argues that the BIA committed a legal error by making such a finding because the BIA is barred by regulation from engaging in factfinding.[7] We agree with Badose that any determination on whether his marriage was entered into with the proper intent is a factual question and that impermissible factfinding by the BIA would constitute a material error of law necessitating reversal. See Adeyanju, 27 F.4th at 36-37, 44-45; Domingo-Mendez v. Garland, 47 F.4th 51, 56 (1st Cir. 2022) (noting that the BIA lacks statutory authority to engage in factfinding of its own). The government contends that these principles do not assist Badose.

First, the government insists that the BIA did no factfinding on the bona fides of Badose's marriage, with its decision instead being fully and permissibly anchored by the IJ's supportable adverse credibility determination. That contention,

---

[7] He also asserts that the BIA erred by impermissibly: (1) failing to expressly evaluate the required remand criteria, see Moreno, 51 F.4th at 46; (2) failing to make an "individualized hardship inquiry," Perez-Trujillo, 3 F.4th at 23; (3) "attaching weight to a factor that d[id] not appropriately bear on the decision" when it referred to the timing of his marriage, Murillo-Robles v. Lynch, 839 F.3d 88, 91 (1st Cir. 2016); and (4) departing from its own precedent by inappropriately relying on his preconceived intent as a negative factor. We do not address these claims.

however, is belied by the language the BIA used to explain its decision: "[Badose]'s marriage occurred, and visa petition filed, after the Immigration Judge's denial, and thus [Badose] was aware that his status was in jeopardy." The insinuation here of an improper motive for the marriage is unmistakable -- Badose married because he was in jeopardy of removal.

The BIA then took this factual determination into account when making its decision to deny the remand motion. After discussing the timing of Badose's marriage, the BIA expressly identified the IJ's adverse credibility determination as a "further" negative factor it relied upon in exercising its discretion. Plainly, the BIA's initial negative factor was its doubt that Badose's marriage was unrelated to his immigration status -- a view that, inescapably, amounted to a factual determination on the legitimacy of Badose's marriage.

Second, the government argues that the BIA was permitted to make factual determinations in the context of Badose's request for remand. It maintains that the applicable version of the regulation that prohibits the BIA from "engag[ing] in factfinding" covers only "appeals" and not other phases of an immigration case, even though a later version of the provision changed its language to expressly proscribe BIA factfinding more broadly in "cases." Compare 8 C.F.R. § 1003.1(d)(3)(iv) (2008) (barring "factfinding in the course of deciding appeals") with 8 C.F.R.

§ 1003.1(d)(3)(iv)(A) (2021) (barring "factfinding in the course of deciding cases"); see also Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure, 85 Fed. Reg. 81588, 81592 (Dec. 16, 2020) ["Appellate Procedures"]. According to the government, the revised regulation is inapplicable because it was enjoined by a district court in California before the BIA acted on Badose's remand motion. See Centro Legal de la Raza v. EOIR, 524 F. Supp. 3d 919, 928, 980 (N.D. Cal. 2021). The government thus maintains that the prior version of the regulation governs our review of the BIA's decision and that, under our caselaw, the prohibition on BIA factfinding does not apply to Badose's motion.

This argument by the government also misses the mark for multiple reasons. With respect to prior cases, the government invokes our unpublished decision in Tsai v. Holder, 505 F. App'x 4, 5 (1st Cir. 2013), as support for its insistence that the BIA could properly perform factfinding in the context of Badose's motion. There we observed: "Although Tsai is correct that 'the Board will not engage in factfinding in the course of deciding appeals,' 8 C.F.R. § 1003.1(d)(3)(iv) [2008], this case concerns a motion to reopen and not an appeal of an IJ's decision." Tsai, 505 F. App'x at 8. As an unpublished decision, however, Tsai has limited precedential value, and its relevance is further diminished by the fact that we concluded that the BIA had not

- 18 -

engaged in factfinding -- meaning that the language quoted by the government is mere dicta.[8]

More importantly, however, the shift in language from "appeals" to "cases" in 8 C.F.R. § 1003.1(d)(3)(iv) -- which occurred after Tsai was decided -- did not represent a change in the scope of the regulation. In revising the regulation, the agency explained that the BIA "adjudicates multiple types of cases, not just appeals," i.e., "cases may be initiated [by]: (1) The filing of a Notice of Appeal, (2) the filing of a motion directly with the [BIA] (e.g., a motion to reconsider or a motion to reopen), or (3) the receipt of a remand." Appellate Procedures, 85 Fed. Reg. at 81592. The regulation's language was revised to explicitly reflect that diversity and to "ensure that [the provision] is clearly applicable to all cases before the [BIA], not solely cases arising through appeals." Id. (emphasis added); id. at n.11 (applying same reasoning specifically to subsection (d)(3)(iv)).

---

[8] Tsai involved the BIA's assessment of the limited evidentiary value of non-authenticated documents in deciding whether to revisit a removal order (based on an alleged change in country conditions) that had been issued, appealed, and affirmed years earlier. See Tsai, 505 F. App'x at 5, 8. The government seems to be suggesting that the BIA's evaluation of the authenticity of documents is somehow equivalent to the BIA's conclusion that Badose's marriage itself was not authentic. If so, that suggestion is plainly preposterous.

The status of the revised regulation -- i.e., the impact of the California district court's enjoining it -- is therefore irrelevant to our decision in this case and an issue we need not discuss.[9]  Nor does the observation about the scope of 8 C.F.R. § 1003.1(d)(3)(iv) by the panel in Tsai -- whatever its precedential value -- remain pertinent in construing the "appeals" version of the regulation.  The legislative history described above firmly establishes that the regulation's revised language -- expressly barring BIA factfinding in "deciding cases" -- was intended to clarify the scope of the regulation, not to substantively change it.  See Brown v. Thompson, 374 F.3d 253, 259 (4th Cir. 2004) ("In determining whether an amendment clarifies or changes an existing law, a court, of course, looks to statements of intent made by the legislature that enacted the amendment.").  And there is no doubt here that the BIA "decid[ed]" Badose's "case" when it improperly rejected his remand motion based in part on its own factfinding.  That decision closed the door on Badose's pursuit of an adjustment of status, ending his immigration proceedings altogether.

---

[9] In Adeyanju, we assumed the earlier version of § 1003.1 applied, citing the decision in Centro Legal de la Raza enjoining its implementation.  See 27 F.4th at 34 n.6.  At least one circuit has declined to treat that decision as binding.  See Chen v. Garland, 43 F.4th 244, 253 n.7 (2d Cir. 2022) ("An agency subject to review in the Second Circuit cannot point to a decision from the Northern District of California to explain why it failed to follow its regulations.").

Hence, even under the earlier version of the regulation, the BIA was barred from using its own factfinding to decide Badose's motion to remand. See, e.g., Liquilux Gas Corp. v. Martin Gas Sales, 979 F.2d 887, 890 (1st Cir. 1992) ("[T]he amendment was not a change at all, but a clarification that did not alter the law, and merely explicated it."); NCNB Texas Nat'l Bank v. Cowden, 895 F.2d 1488, 1500 (5th Cir.1990) ("[A] legislative body may amend statutory language 'to make what was intended all along even more unmistakably clear.'" (quoting United States v. Montgomery Cnty., 761 F.2d 998, 1003 (4th Cir. 1985))).  If the BIA determined that "further factfinding [was] needed in [this] particular case," despite the government's lack of opposition to Badose's remand motion or his merits appeal, the only available course was to "remand the proceeding to the [IJ]." 8 C.F.R. § 1003.1(d)(3)(iv); see also Rodriguez v. Holder, 683 F.3d 1164, 1168-69 (9th Cir. 2012) (remand to IJ required for outcome determinative supplemental factfinding).  By instead offering its own assessment of Badose's marriage, the BIA engaged in impermissible factfinding, rendering its decision to deny remand an abuse of discretion.  See, e.g., Adeyanju, 27 F.4th at 38 ("A 'material error of law automatically constitutes an abuse of discretion.'" (quoting Aponte v. Holder, 610 F.3d 1, 4 (1st Cir. 2010))).

On the record before us, we can only conclude that the BIA improperly denied Badose's unopposed remand motion both by

arbitrarily deviating from a standard course of practice and by improperly engaging in factfinding in violation of 8 C.F.R. § 1003.1(d)(3). Badose is therefore entitled to a remand to the IJ so that he can present his case for adjustment of status based on his marriage. See Patel, 596 U.S. at 332 (explaining that adjustment of status is discretionary notwithstanding noncitizen's eligibility for such relief).

### III.

Accordingly, we GRANT the petition for review; VACATE the BIA's decision; and REMAND the case to the BIA with directions that the BIA grant Badose's motion to remand the case to the IJ for further proceedings consistent with this opinion.

**So ordered.**