19-4162
*Chen v. Garland*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

---

AUGUST TERM 2021
No. 19-4162

**LI CHEN,**
*Petitioner*,

v.

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
*Respondent*.

---

On Petition for Review of an Order
of the Board of Immigration Appeals

---

ARGUED: MARCH 18, 2022
DECIDED: AUGUST 5, 2022

---

Before:      JACOBS, POOLER, and MENASHI, *Circuit Judges*.

Li Chen, a citizen of China, petitions for this court's review of the BIA's denial of his motion to reopen his removal proceedings. According to Chen, the BIA erred in finding his motion to be time-barred under 8 U.S.C. § 1229a and further erred in refusing to exercise its authority to reopen his case *sua sponte*. However, Chen's motion

was filed years after his order of removal became final, and he has not identified any changed country conditions that could justify the delay. Furthermore, we lack jurisdiction to review the BIA's decision not to reopen a case *sua sponte*. We therefore dismiss in part and deny in part Chen's petition for review.

Judge Pooler concurs in a separate opinion.

———————

STUART ALTMAN, Law Office of Stuart Altman, New York, NY, *for Petitioner*.

JENNY C. LEE, Trial Attorney, Office of Immigration Litigation (Jeffrey B. Clark, Acting Assistant Attorney General, Civil Division, Matthew B. George, Senior Litigation Counsel, Office of Immigration Litigation, *on the brief*), United States Department of Justice, Washington, DC, *for Respondent*.

———————

MENASHI, *Circuit Judge*:

In 2014, an immigration judge ("IJ") entered an order of removal for Li Chen, a citizen of China who arrived in the United States without inspection. Two years later, Chen, having never left, obtained derivative asylee status through his wife. He filed a motion to reopen his case in 2018, seeking to terminate the removal proceedings. The same IJ denied his motion as untimely under 8 U.S.C. § 1229a(c)(7)(C) and declined to exercise the authority to reopen Chen's case *sua sponte*. The Board of Immigration Appeals ("BIA") affirmed without a written opinion, and Chen petitioned our court to review the BIA's order.

This court has repeatedly held that we lack jurisdiction to review the BIA's refusal to exercise its authority to reopen a case *sua sponte. See, e.g., Cyrus v. Keisler*, 505 F.3d 197, 202 (2d Cir. 2007). And Chen's motion is untimely under § 1229a(c)(7)(C)(i). The petition is therefore dismissed in part and denied in part.

## BACKGROUND

### I

Under the Immigration and Nationality Act, an order of removal is "the order of the special inquiry officer, or other such administrative officer to whom the Attorney General has delegated the responsibility for determining whether an alien is deportable, concluding that the alien is deportable or ordering deportation." 8 U.S.C. § 1101(a)(47)(A). That order becomes "final" upon the earlier of "a determination by the Board of Immigration Appeals affirming such order" or "the expiration of the period in which the alien is permitted to seek review of such order by the Board of Immigration Appeals." *Id.* § 1101(a)(47)(B).

A longstanding avenue for challenging final orders of removal is the motion to reopen, by which an alien "asks that the proceedings be reopened for new evidence and a new decision, usually after an evidentiary hearing." *Ke Zhen Zhao v. DOJ*, 265 F.3d 83, 90 (2d Cir. 2001); *see also Kucana v. Holder*, 558 U.S. 233, 242 (2010) ("Federal-court review of administrative decisions denying motions to reopen removal proceedings dates back to at least 1916."). At one time, "the authority for such motions derived solely from regulations promulgated by the Attorney General." *Luna v. Holder*, 637 F.3d 85, 95 (2d Cir. 2011). But Congress codified the motion to reopen by enacting the Illegal Immigration Reform and Immigration Responsibility Act

3

of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009, which "transform[ed] the motion to reopen from a regulatory procedure to a statutory form of relief available to the alien." *Dada v. Mukasey*, 554 U.S. 1, 14 (2008).

Under the IIRIRA—now codified at 8 U.S.C. § 1229a—an alien "may file one motion to reopen proceedings," which "shall be filed within 90 days of the date of entry of a final administrative order of removal." 8 U.S.C. § 1229a(c)(7). The statute also provides a limited exception to the 90-day deadline. Under 8 U.S.C. § 1229a(c)(7)(C)(ii), "[t]here is no time limit on the filing of a motion to reopen" if three conditions are met. First, "the basis of the motion" must be to apply for asylum or statutory withholding of removal. *Id.* § 1229a(c)(7)(C)(ii). Second, the motion must be "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." *Id.* Third, it must be that the evidence of changed country conditions "is material and was not available and would not have been discovered or presented at the previous proceeding." *Id.*

Apart from § 1229a, the BIA also has the authority to reopen a case *sua sponte*. *See Zhang v. Holder*, 617 F.3d 650, 657-58 (2d Cir. 2010). "*Sua sponte* reopening was created by agency regulations; no statute establishes or limits an IJ's or the BIA's authority to reopen a case on their own motion." *Rubalcaba v. Garland*, 998 F.3d 1031, 1037 (9th Cir. 2021). The regulation governing *sua sponte* reopening, 8 C.F.R. § 1003.2, "derives from a statute that grants general authority over immigration and nationalization matters to the Attorney General, and sets no standard for the Attorney General's decision-making in this context." *Lenis v. U.S. Att'y Gen.*, 525 F.3d 1291, 1293 (11th Cir. 2008)

4

(referring to 8 U.S.C. § 1103(g)(2)). The regulation reflects this discretion. At the time of the proceedings in this case, 8 C.F.R. § 1003.2(a) provided that "[t]he Board may at any time reopen or reconsider on its own motion any case in which it has rendered a decision."

On December 16, 2020, the Executive Office of Immigration Review promulgated a new rule, limiting the instances in which *sua sponte* reopening may be employed and making those new limits "effective for all cases, regardless of posture, on the effective date." *Appellate Procedures and Decisional Finality in Immigration Proceedings; Administrative Closure*, 85 Fed. Reg. 81,588, 81,588, 81,654 (Dec. 16, 2020) (codified at 8 C.F.R. § 1003.2). Thus, 8 C.F.R. § 1003.2(a) now provides that the BIA "may at any time reopen" a case "solely in order to correct a ministerial mistake or typographical error in that decision or to reissue the decision to correct a defect in service." It also provides that, "[i]n all other cases, the Board may only reopen or reconsider any case in which it has rendered a decision solely pursuant to a motion filed by one or both parties." 8 C.F.R. § 1003.2(a) (2021). The final rule's effective date was January 15, 2021. 85 Fed. Reg. at 81,588.

## II

Over a decade ago, Li Chen arrived in the United States through Miami, Florida, without inspection. In November 2009, he applied for asylum, withholding of removal, and relief under the Convention Against Torture. In his application, Chen claimed that he "was persecuted by the Chinese government because [he] practiced Falun Gong in China," was "arrested, detained, interrogated, and tortured by the Chinese police," and was "afraid of being persecuted

5

by the Chinese government again." Cert. Admin. R. 559. In January 2010, the Department of Homeland Security initiated removal proceedings against Chen as an "alien present in the United States without being admitted or paroled, or who [has] arrive[d] in the United States at any time or place other than as designated by the Attorney General." 8 U.S.C. § 1182(a)(6)(A)(i).

In December 2011, an IJ sustained the charge of removability and found that Chen failed to establish his eligibility for the relief he sought. Specifically, the IJ found that Chen did not demonstrate by clear and convincing evidence that he had filed his asylum application within a year of arriving in the United States and that Chen was not credible based on inconsistencies between his testimony at the hearing and his application. Chen appealed to the BIA, and in July 2013 the BIA remanded to the IJ for further proceedings. The BIA agreed that Chen failed to demonstrate eligibility for asylum, but it held that the IJ committed clear error in finding that Chen was not credible.

On remand, in March 2014, the IJ denied Chen's application. Chen never appealed this decision, and therefore there is no hearing transcript.[1] In the reopening proceedings at issue in this case, the IJ summarized the remand hearing and decision. According to the IJ, Chen admitted to false testimony in his hearing on remand. Ultimately, the IJ concluded that Chen, "by presenting new documents and testimony after the remand, had undermined the

---

[1] *See* EXEC. OFF. FOR IMMIGR. REV., BOARD OF IMMIGRATION APPEALS PRACTICE MANUAL 51 (2021) ("The Board transcribes proceedings, where appropriate, after receiving a properly filed appeal from the decision of an Immigration Judge.").

Board's prior conclusion that he should be considered credible." Cert. Admin. R. 69. Accordingly, the IJ ordered Chen removed to China.

At some point during his time in the United States, Chen married Yan Lin Huang, also an alien. On January 5, 2015, Huang was granted asylum, and days later she filed a Form I-730 Refugee Asylee Relative Petition. On May 3, 2016, that motion was granted. Years after Chen's application was denied, he had become a derivative asylee. *See* 8 U.S.C. § 1158(b)(3)(A) ("A spouse … of an alien who is granted asylum under [§ 1158(b)] may, if not otherwise eligible for asylum under this section, be granted the same status as the alien if accompanying … such alien.").

On June 6, 2016, Chen moved the Immigration Court "for an order to reopen and terminate his removal proceedings on the ground that [he] was granted asylee status on May 3, 2016." Cert. Admin. R. 75. In his affidavit, Chen gave his reasons for wanting his removal proceedings terminated. According to Chen, "if I meet the police or immigration officers I still might be taken by them because I was ordered removed." *Id.* at 80. Additionally, Chen feared that he "would have trouble" were he to "go back to China to visit [his] parents and relatives and re-enter the United States." *Id.*

The next month, the IJ—the same one who had presided over Chen's initial asylum application—denied the motion. First, the IJ determined that, because the order of removal was issued two years prior to the motion to reopen, Chen's motion fell outside the usual 90-day period for filing motions to reopen. For that reason, Chen needed to "establish[] some exception to the filing deadline," *id.* at 69, and he did not. Second, the IJ stated that his "authority to reopen the case sua sponte as a matter of discretion" was "not helpful to respondent." *Id.*

7

According to the IJ, such relief "should be denied as a matter of discretion" because "[t]here is no good basis shown to facilitate his visits to the country where he claimed to fear grievous persecution." *Id.* at 71. Third, the IJ separately concluded that Chen's motion should be denied because "it is very unlikely that the removal order would now cause any inconvenience for" Chen given that his removal order "is not public." *Id.* at 70.

Chen did not appeal that decision.[2] Instead, in April 2018, he filed another motion to reopen. This time, Chen expressly asked the IJ to exercise his authority to reopen the case *sua sponte*. According to Chen, his new derivative asylee status was "a fundamental change that warrants the use of the sua sponte authority to reopen and then terminate the case." Cert. Admin. R. 41. Chen also reiterated why he wanted to terminate the case: he claimed to "continue[] to live in fear" that "[h]e might still be detained by immigration authorities," and he asserted that "he would be unable to enjoy the security of his asylee status should he seek to leave the United States to revisit his parents and then return to the United States after such a visit due to an outstanding removal order." *Id.*

The passing of two years did not change the IJ's mind. The IJ again noted that Chen's motion was "clearly not timely under the normal rule" and that Chen "has failed to allege or prove any exception to the time and number limits set by the regulations." *Id.* at 31. As to Chen's request for *sua sponte* reopening, the IJ noted that he "denied the first motion to reopen partly as a matter of discretion, due

_____

2 According to Chen, he "missed the appeal deadline" because the IJ's decision denying his first motion to reopen "was never delivered." Cert. Admin. R. 9.

to the prior false testimony" and "is completely unwilling to reopen and terminate the case as a matter of discretion, especially as [Chen] has failed to show any significant hardship to the wife through whom he obtained his derivative asylum status." *Id.* The IJ denied Chen's motion on May 3, 2018.

For the first time in six years, Chen appealed an IJ decision to the BIA. He made the same arguments as he did before the IJ. And he received the same result. On November 29, 2019, the BIA "affirm[ed], without opinion, the result of the decision below." *Id.* at 3. Twelve days later, Chen petitioned for this court's review.

## DISCUSSION

"Where, as here, the BIA affirms the result below without opinion, we review the IJ's decision directly as the final agency determination." *Twum v. INS*, 411 F.3d 54, 58 (2d Cir. 2005). We review the denial of a motion to reopen for abuse of discretion. *Kaur v. BIA*, 413 F.3d 232, 233 (2d Cir. 2005). At the same time, "[w]e do not have jurisdiction to review the BIA's entirely discretionary refusal to reopen a case *sua sponte*." *Centurion v. Sessions*, 860 F.3d 69, 74 (2d Cir. 2017) (internal quotation marks omitted).[3]

---

[3] In *Mata v. Lynch*, the Supreme Court held that our jurisdiction to review "final order[s] of removal" under 8 U.S.C. § 1252(a)(1) "encompasses review of decisions refusing to reopen or reconsider such orders" pursuant to 8 U.S.C. § 1229a(c)(7). 576 U.S. 143, 147 (2015) (alteration in original). According to the Supreme Court, that result is "expressly contemplate[d]" by § 1252(b)(6), *id.*, which provides that "any review sought of a motion to reopen or reconsider [a removal order] shall be consolidated with the review of the order," 8 U.S.C. § 1252(b)(6). This holding of *Mata* might be affected by the Supreme Court's subsequent decision that only "rulings that affect the validity of the final order of removal merge into the final order of

9

Chen makes two principal arguments on appeal. First, Chen contends that the BIA "erred in ruling [his] case was time barred." Petitioner's Br. 9. Second, he argues that the BIA erred in refusing to exercise its authority to reopen his case *sua sponte. Id.* at 13. We address these arguments in turn.

**I**

As always, "[b]ecause we have an obligation to assure ourselves of jurisdiction under Article III, we begin there." *Hassoun v. Searls*, 968 F.3d 190, 195 (2d Cir. 2020) (alteration omitted) (quoting *Trump v. Hawaii*, 138 S. Ct. 2392, 2415-16 (2018)). At oral argument, Chen represented to this court for the first time that U.S. Citizenship and Immigration Services ("USCIS") adjusted his status to that of a legal permanent resident in 2018. Oral Argument Audio Recording at 3:25. According to supplemental briefing provided by the government, "[i]f this information is accurate, the Court lacks jurisdiction over this petition for review because Petitioner is not subject to a final order of removal." Respondent's Supplemental Br. 2.

We need not decide whether Chen has adjusted his status to that of a legal permanent resident.[4] We disagree with the government

---

removal for purposes of judicial review." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020). We remain bound by *Mata. See OneSimpleLoan v. U.S. Sec'y of Educ.*, 496 F.3d 197, 208 (2d Cir. 2007) ("[W]e are not at liberty to depart from binding Supreme Court precedent unless and until the Court reinterprets that precedent.") (internal quotation marks and alterations omitted).

[4] It is uncertain whether Chen has actually obtained legal permanent resident status. Neither he nor the government has provided any record evidence to indicate that Chen has, for the past four years, been a legal permanent resident. Additionally, regulations provide that "[i]n the case of

10

that an adjustment of status would nullify Chen's final order of removal. The INA provides that, "[u]nless otherwise specified in this chapter, a proceeding under [§ 1229a] shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States" and that "[a]n immigration judge shall conduct proceedings for deciding the inadmissibility or deportability of an alien." 8 U.S.C. § 1229a(a). Outside of that administrative process, "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." *Id.* § 1252(a)(5).

A final order of removal was entered for Chen in 2014. Chen never administratively appealed that order. Since then, the IJ has recognized the continued existence of the removal order. When denying Chen's first motion to reopen, the IJ noted that "it is very unlikely that the removal order would now cause any inconvenience for respondent." Cert. Admin. R. 63. And the current petition is the first time Chen has sought this court's review. Thus, Chen's final order of removal could not have been expunged. If Chen is a legal

---

any alien who has been placed in deportation proceedings or in removal proceedings (other than as an arriving alien), the immigration judge hearing the proceeding has *exclusive* jurisdiction to adjudicate any application for adjustment of status the alien may file." 8 C.F.R. § 1245.2(a)(1)(i) (emphasis added). In other words, "[d]epending on the circumstances, jurisdiction to consider an adjustment of status application lies either with an immigration judge and the BIA or with the USCIS, but never simultaneously with both." *Singh v. USCIS*, 878 F.3d 441, 446 (2d Cir. 2017). Thus, even if USCIS purported to adjust Chen's status, it is unclear whether such an action could have any effect because the IJ presiding over Chen's removal proceeding had exclusive jurisdiction to adjudicate any application for adjustment of status.

permanent resident, the government will not enforce the final order of removal as long as he retains that status. But that does not mean the order does not exist or that reopening Chen's removal proceedings will be without effect. We therefore may address Chen's claims.

**II**

Chen's first argument is that the BIA "erred in ruling [his] case was time barred." Petitioner's Br. 9. Chen argues that the grant of derivative asylee status is "new evidence" and that the usual 90-day time bar on motions to reopen does not apply to him. *Id.* at 10. For that reason, Chen claims, the IJ erroneously denied his motion to reopen under 8 U.S.C. § 1229a(c)(7).

We disagree. To avoid the 90-day time bar, a late motion to reopen must be "based on changed country conditions arising in the country of nationality or the country to which removal has been ordered." 8 U.S.C. § 1229a(c)(7)(C)(ii). In *Wang v. BIA*, this court observed that, to show changed country conditions, "[a] self-induced change in personal circumstances cannot suffice." 437 F.3d 270, 274 (2d Cir. 2006). In that case, the petitioner was denied asylum and granted voluntary departure, but he never left the United States. *Id.* at 272. He filed a motion to reopen four and a half years later, claiming changed country conditions by reason of his marriage and the birth of two of his children in the interim. *Id.* at 272-73. We held that "the birth of petitioner's two children in the United States is evidence of his changed personal circumstances, as opposed to changed conditions in [his country]." *Id.* at 273. We observed that this was a situation in which "a petitioner is seeking to reopen his … case due to circumstances entirely of his own making after being ordered to leave

12

the United States" and that "it would be ironic, indeed, if petitioners … who have remained in the United States illegally following an order of deportation[] were permitted to have a second and third bite at the apple simply because they managed to marry and have children while evading authorities." *Id.* at 274.

Chen's obtaining derivative asylee status through his wife is not a "changed *country* condition[]." 8 U.S.C. § 1229a(c)(7)(C)(ii) (emphasis added). That he is now a derivative asylee is not a changed circumstance "*in China*; rather he claim[s] that his personal circumstances *in the United States* ha[ve] changed." *Li Yong Zheng v. DOJ*, 416 F.3d 129, 130 (2d Cir. 2005). Chen's claim is no different than the claims this court has consistently rejected as "not fit[ting] under the exception set forth" in § 1229a(c)(7)(C)(ii). *Id.* at 130-31 (quoting *Guan v. BIA*, 345 F.3d 47, 49 (2d Cir. 2005)). In the years since being ordered removed, Chen married and his wife obtained asylee status. That may have afforded him asylee status as well, but it does not entitle him to another "bite at the apple" in removal proceedings long since completed. *Wang*, 437 F.3d at 274.

## III

Chen's second argument is that the IJ's refusal to reopen his case *sua sponte* is an error requiring remand. In Chen's view, the IJ should have exercised his authority to reopen *sua sponte* based on Chen's derivative asylee status. He also objects to how the IJ considered the earlier 2014 finding on remand that Chen was not credible.

It is well settled—in every circuit to address the issue[5]—that "[w]e do not have jurisdiction to review the BIA's entirely discretionary refusal to reopen a case *sua sponte*." *Centurion*, 860 F.3d at 74 (internal quotation marks omitted). In *Ali v. Gonzales*, this court held that "a decision of the BIA whether to reopen a case *sua sponte* under 8 C.F.R. § 1003.2(a) is entirely discretionary and therefore beyond our review." 448 F.3d 515, 518 (2d Cir. 2006). For that reason, "we lack[ed] jurisdiction to review the BIA's decision not to reopen [the petitioner's] immigration proceedings *sua sponte*." *Id.*

That conclusion followed from our precedent and the language of the regulation. Under the Administrative Procedure Act ("APA"), "agency action is not subject to judicial review 'to the extent that' such action 'is committed to agency discretion by law.'" *Lincoln v. Vigil*, 508 U.S. 182, 190-91 (1993) (quoting 5 U.S.C. § 701(a)(2)). We have held that "[t]his limitation on the APA's waiver of immunity means that there is no jurisdiction if the statute or regulation said to govern the challenged agency action 'is drawn so that a court would have *no meaningful standard* against which to judge the agency's exercise of discretion.'" *Lunney v. United States*, 319 F.3d 550, 558 (2d Cir. 2003) (quoting *Heckler v. Chaney*, 470 U.S. 821, 830 (1985)). Our holding in

---

[5] The D.C. Circuit is the only court to have said nothing on the topic. Every other circuit has held—as we have—that the denial of a motion to reopen a removal proceeding *sua sponte* is unreviewable. *See Lopez-Dubon v. Holder*, 609 F.3d 642, 647 (5th Cir. 2010); *Mosere v. Mukasey*, 552 F.3d 397, 401 (4th Cir. 2009); *Lenis*, 525 F.3d at 1294; *Tamenut v. Mukasey*, 521 F.3d 1000, 1005 (8th Cir. 2008) (en banc); *Harchenko v. INS*, 379 F.3d 405, 410-11 (6th Cir. 2004); ; *Pilch v. Ashcroft*, 353 F.3d 585, 586 (7th Cir. 2003); *Belay-Gebru v. INS*, 327 F.3d 998, 1001 (10th Cir. 2003); *Calle-Vujiles v. Ashcroft*, 320 F.3d 472, 475 (3d Cir. 2003); *Ekimian v. INS*, 303 F.3d 1153, 1159 (9th Cir. 2002); *Prado v. Reno*, 198 F.3d 286, 292 (1st Cir. 1999).

*Ali* merely recognized that 8 C.F.R. § 1003.2—which, at the time, provided that "[t]he Board *may* at any time reopen or reconsider on its own motion any case in which it has rendered a decision," 8 C.F.R. § 1003.2(a) (2004) (emphasis added)—was such a regulation, *see Vela-Estrada v. Lynch*, 817 F.3d 69, 71-72 (2d Cir. 2016) ("[W]e lack jurisdiction to review the BIA's decision not to reopen removal proceedings *sua sponte*, another action committed to BIA discretion by regulation.").[6]

We lack jurisdiction to consider Chen's challenge to the IJ's refusal to reopen his case *sua sponte*. Express authorization to reopen cases *sua sponte* is found only in regulations, and those regulations

---

[6] It may be more precise to say that § 701(a)(2), which provides that the APA does not apply when "agency action is committed to agency discretion by law," concerns justiciability rather than jurisdiction. The Supreme Court has made clear that "the APA does not afford an implied grant of subject-matter jurisdiction" and that jurisdiction to review agency action is provided instead by 28 U.S.C. § 1331. *Califano v. Sanders*, 430 U.S. 99, 105-07 (1977); *see also Builders Bank v. FDIC*, 846 F.3d 272, 275 (7th Cir. 2017) ("Section 701(a)(2) is no more a limit on subject-matter jurisdiction than are doctrines of absolute and qualified immunity, statutes of limitations, and many other rules that prevent courts from deciding whether the defendant acted properly."). Based on this reasoning, the Eighth Circuit has held that the denial of a motion to reopen *sua sponte* is nonjusticiable rather than beyond our subject-matter jurisdiction. *See Ochoa v. Holder*, 604 F.3d 546, 549-50 (8th Cir. 2010); *see also Chehazeh v. Att'y Gen.*, 666 F.3d 118, 125 n.11 (3d Cir. 2012) (noting that the Third Circuit's holding that courts lack "jurisdiction" to review a denial of a motion to reopen *sua sponte* may have been "too loose a use of that term"). We are bound by this court's precedent to apply § 701(a)(2) as a jurisdictional bar. *See Vela-Estrada*, 817 F.3d at 71-72. But we would be obliged to dismiss Chen's challenge whether § 701(a)(2) places review of a *sua sponte* reopening decision beyond our jurisdiction or renders that decision nonjusticiable.

have only ever said that the BIA "may at any time reopen" a case. 8 C.F.R. § 1003.2(a). There is "no meaningful standard against which to judge the agency's exercise of discretion," *Vela-Estrada*, 817 F.3d at 71 (quoting *Heckler*, 470 U.S. at 830); we therefore lack jurisdiction to review it.[7]

At oral argument, Chen argued that we may review the IJ's decision denying *sua sponte* reopening under *Mahmood v. Holder*, 570 F.3d 466 (2d Cir. 2009). Oral Argument Audio Recording at 8:00. In that case, we reaffirmed that the agency's refusal to "exercise its

---

[7] Moreover, it is unclear that the BIA on remand would even have the authority to grant Chen his requested relief. The governing regulation permits *sua sponte* reopening only "to correct a ministerial mistake or typographical error" or "to reissue the decision to correct a defect in service," 8 C.F.R. § 1003.2(a) (2022), and the agency final rule made clear that those provisions "are effective for all cases, regardless of posture, on the effective date" of January 15, 2021. 85 Fed. Reg. at 81,588; *see also id.* at 81,646-47 ("As the withdrawal of a delegation of authority by the Attorney General, the provisions of the rule related to the restrictions on *sua sponte* reopening authority are effective for all cases, regardless of posture, on the effective date."). The government in supplemental briefing has informed us that this rule has been preliminarily enjoined by the U.S. District Court for the Northern District of California. *See Centro Legal de la Raza v. EOIR*, 524 F. Supp. 3d 919 (N.D. Cal. 2021); *see also Oluwajana v. Garland*, 33 F.4th 411, 415 n.* (7th Cir. 2022) (noting that the new rule is "preliminarily enjoined"); *Berdiev v. Garland*, 13 F.4th 1125, 1138 n.6 (10th Cir. 2021) (same). But *Centro Legal* does not bind this court. An agency subject to review in the Second Circuit cannot point to a decision from the Northern District of California to explain why it failed to follow its regulations. Regardless, the current regulation also includes the language that the Board "*may* at any time reopen" a case. 8 C.F.R. § 1003.2(a) (2022) (emphasis added). Thus, there is no meaningful standard against which to judge a denial of *sua sponte* reopening even under the new regulation, and we still lack jurisdiction to review such a denial.

discretionary *sua sponte* authority" is a "decision we cannot review." *Mahmood*, 570 F.3d at 471. But in view of an intervening Supreme Court decision that may have allowed a claim for relief that the agency might otherwise have considered futile, we remanded to the agency for another discretionary *sua sponte* ruling that, *Mahmood* emphasizes, would be "unreviewable by us." *Id.* We thus created an exception to the bar on our jurisdiction "where the Agency may have declined to exercise its *sua sponte* authority because it misperceived the legal background and thought, incorrectly, that a reopening would necessarily fail." *Id.* at 469.[8]

We are of course bound by *Mahmood*, but that case does not give us jurisdiction to consider Chen's challenge to the IJ's denial of *sua sponte* reopening. The IJ held that the motion to reopen "should be denied as a matter of discretion" because Chen "ha[d] failed to show any significant hardship to the wife through whom he obtained his derivative asylee status" and "[t]here is no good basis shown to facilitate his visits to" China, "where he claimed to fear grievous persecution." Cert. Admin. R. 37, 64. There is no indication that the IJ

---

[8] Other courts disagree that there is such an exception. *Compare Thompson v. Barr*, 959 F.3d 476, 483 (1st Cir. 2020) (listing cases that follow the *Mahmood* approach), *with Butka v. U.S. Att'y Gen.*, 827 F.3d 1278, 1285 (11th Cir. 2016) (rejecting the *Mahmood* approach). The Eighth Circuit, in "reserv[ing] judgment on whether [it] would accept the approach of … *Mahmood*," noted that "the exception to judicial review for agency action committed to agency discretion is typically characterized as categorical" and that "the Supreme Court elsewhere has rejected a similar 'theory of partial reviewability' because the 'discretionary character of the administrative action involved' excluded a judicial remedy altogether.'" *Barajas-Salinas v. Holder*, 760 F.3d 905, 908 n.* (8th Cir. 2014) (quoting *Schilling v. Rogers*, 363 U.S. 666, 675-76 (1960)).

"misperceived the legal background" and thought that reopening "would necessarily fail." *Mahmood*, 570 F.3d at 469. The IJ did not even rely on a legal determination. We therefore lack jurisdiction to review the denial despite *Mahmood*.

## CONCLUSION

Of the two challenges Chen raises in his petition for review of the denial of his motion to reopen, one is outside this court's jurisdiction, and neither can succeed. The petition for review is therefore **DISMISSED** in part and **DENIED** in part.

POOLER, *Circuit Judge*, concurring:

I concur in the judgment and join the majority opinion, except for footnotes 4, 7, and 8. Today's ruling is narrow: We hold only that the BIA did not abuse its discretion in denying Chen's motion to reopen as untimely, and that we otherwise lack jurisdiction to review the "entirely discretionary" decision not to reopen proceedings sua sponte. *See Ali v. Gonzales*, 448 F.3d 515, 518 (2d Cir. 2006). Our ruling does not, and should not be read to, cast doubt on Chen's present legal status in this country. Nor do I understand the majority opinion to undermine the continuing vitality of *Mahmood v. Holder*, 570 F.3d 466 (2d Cir. 2009). That case's holding—that in some circumstances we may remand "where the Agency may have declined to exercise its *sua sponte* authority because it misperceived the legal background," *id.* at 469—remains good law, even if it is unavailing for Chen here.